## SIMS vs. THE STATE.

[INDICTMENT FOR LARCENY OF MULES.]

1. *Circumstantial evidence ; province of jury.*—Where the evidence is merely circumstantial in its character, the following charge to the jury is erroneous, to-wit : "If you believe the evidence, you will find the defendant guilty ;" it invades the province of the jury.
2. *Judicial propriety.*—For the court to make the following remark to the jury, in connection with the charge, to-wit: " Go along and find the defendant guilty," is a great violation of judicial propriety, and should reverse the conviction and sentence of the court.

3

APPEAL from the Perry Circuit Court.
Tried before the Hon. B. L. WHELAN.

JAMES SIMS was indicted, at the fall term, 1868, of Perry circuit court, for larceny of two mules, the property of Robert Foster. On the 12th of November, the defendant went to trial, on issue joined, on the plea of "not guilty," was convicted, and sentenced to five years imprisonment in the penitentiary. The following bill of exceptions was reserved by him, on the trial. "The State introduced one Dr. Scott, who testified on behalf of the State, as follows: Witness was at Dr. Robert Foster's, in Perry county, Alabama, in August, 1868—that he remained one night—that early in the morning, two mules belonging to Dr. Foster were missing from his stable and lot—that witness, in company with Robert Foster, jr., pursued the mules by their track from the lot of said Foster, along the road leading to Greensboro, in Hale county, Alabama, and from thence to the Warrior river, in Greene county, where they found the two mules in a lot owned by the ferryman on said river, on the road to Eutaw, in Greene county—that witness went on to a short distance beyond Clinton, in Greene county, where he came up with defendant, in company with another man, who was to witness unknown. Witness discovered defendant in the public road, conversing with two negroes—and the defendant at this time stepped into the bushes, to obey a call of nature. Witness rode up to defendant, and stated to him, "you are my prisoner," to which prisoner replied, "what for;" was answered, "come along with me, and we will see about it." Witness and one Munroe brought defendant back to Eutaw, and put him in jail that night—and that night searched him, while in jail, and found on his person a pad-lock, which was proven to be the pad-lock of Dr. Robert Foster, and the lock he used to lock the stable, in which the mules, found in the lot of the ferryman, were kept. Witness further testified that defendant denied his guilt. Witness further testified, that he told the defendant that the pad-lock which he had, was the pad-lock of Dr. Foster, to which he replied, that 'there were more locks in the world than one.' Witness further stated,

that defendant admitted, that he crossed the Warrior river in a canoe the night before he was arrested, and gave the ferryman his knife to pay for the use of the canoe.

"Dr. Robert Foster, another witness for the State, testified that when the defendant was brought to his house, (on the way to jail) that witness asked defendant how far he travelled the night the mules were stolen, to which defendant replied, 'you are too hard for me.' Witness further testified, that he asked prisoner about the lock, and he made no reply.

Robert Foster, junior, testified that he was in the habit of feeding his father's mules, and securing them by locking the back gate at night—that the night before the pursuit of the defendant, he went to the lot, as was his custom, to look after the mules—that while waiting for the negroes to bring the mules to the lot, he sat down on the side of the road, and soon two men on foot passed along the road, one of whom he identified as the prisoner at the bar, and the other he described as the larger man of the two, dressed in black pants, a white linen coat, and wore whiskers ; that these two persons passed witness and stopped on a hill about a quarter of a mile further on, when they stopped, and one sat down on the side of the road, and the other laid down, where they remained until dark ; that witness then went down to the house, leaving them there ; that he saw the mules in question put into the lot and secured ; that he is not mistaken as to the identity of the prisoner as one of the men whom he saw as they looked at him, as they passed by ; that it was just after sun down and before dark when he saw them ; that next morning when he went to the lot, the negroes reported the saddle mule of their team missing, and the lock of the stable gone. Witness called Dr. Scott, and they then started in pursuit ; they followed the track of the mule, and also two human tracks, which he followed through the lot, across a branch to where the lot fence had been laid down, and through the orchard, to where the fence was let down into the road ; that he knew the track of the mule, because one foot was twisted by having been cut with a plow, and the man's track was peculiar by reason of a patch on one side of the bot-

tom of the sole, which mark, in the track in the lot, and going from the lot, he noticed in the track made by the defendant at the lot, when returning next day. The witness also testified that after going some distance, about three miles, he discovered that there were tracks of two mules, and that after pursuing the tracks along the road through Greensboro, he and Scott found the two mules in a lot at the ferry, on the Warrior river and in the possession of the ferryman, who stated that he had caught them grazing loose in the road; they left the mules in the custody of the ferryman, and continued the pursuit through Eutaw. Witness loaned his horse to one Monroe, and remained in Eutaw until that night about two hours in the night ; Scott and Monroe and the other person brought the prisoner to Eutaw ; and that the lock which was exhibited in court, was there given him by Scott, and that this lock is the lock of his father, which was on the stable the night before, and that he knew it by a mark witness had made on the lock with his knife ; that he asked the defendant five times about the lock at different intervals of time, and that he replied every time, " there are more locks than one in the world," and that he did not deny that it was his father's lock, and the last time he asked him he said, " he had found it in the road," and told him to hush asking such foolish questions. Witness identified both of the mules as his father's mules, and stated that they were both in the lot the night before, that this was in Perry county, and were taken from the lot some time last summer. This was all the testimony introduced on the trial."

The court charged the jury as follows : " Gentlemen of the jury, if you believe the evidence, you will find the defendant guilty," to which the prisoner excepted. The court then made the following statement to the jury : " Go along and find the defendant guilty," and the defendant again excepted.

The errors assigned are : 1. The charge to the jury. 2. The statement to the jury.

W. B. MODAWELL and J. B. SHIVERS, for prisoner.—1. The charge of the court is erroneous because it takes from the

jury the right to determine the truth of the evidence, and to ascertain the facts.

2. The charge of the court invades the province of the jury, and is therefore erroneous.

3. The testimony in this case is purely circumstantial, and a considerable portion of it very remote, and such a charge is unreasonable and oppressive, and denies the right of the prisoner to be acquitted, if the jury should entertain a reasonable doubt as to his guilt.

4. The charge, "go along and find the defendant guilty," is so palpably erroneous, that it is wholly unnecessary to cite any authority to show the invasion by the court of the province of the jury.

Both charges of the court are illegal and not warranted by the testimony, and show a disposition in the court to take from the jury all the rights they have. Juries ought to be left free to decide upon the facts introduced on the trial. The cause, therefore, ought to be reversed and remanded, in order that the prisoner may have a fair trial.

JOSHUA MORSE, Attorney-General, declined arguing, or filing a brief, under the circumstances of this case.

PECK, C. J.—The evidence in this case is altogether circumstantial in its character, and by no means warranted the charge given to the jury, to-wit : " If you believe the evidence, you will find the defendant guilty." The evidence should have been left the jury to determine, whether it satisfied them beyond a reasonable doubt, that the prisoner was guilty of the crime charged in the indictment. The charge clearly invades the province of the jury, and is erroneous for that reason.

The remark made to the jury, after the charge was given, was, to say the least of it, a great violation of judicial propriety, and, no doubt, had an influence with the jury that did, or might well have prejudiced the prisoner. Such a remark to the jury, in connection with the charge, ought, of itself, to reverse the conviction.

For the error in the charge, the conviction and the sentence of the court is reversed, and the cause is remanded for another trial.