SAMUEL HAWKINS AND HOWARD HAWKINS, PLAIN-
TIFFS IN ERROR, VS. THE STATE OF FLORIDA, DE-
FENDANT IN ERROR.

CRIMINAL LAW—CHARGES, WHEN TAKEN BY THE JURY TO THEIR ROOM, SHOULD NOT HAVE EXTRANEOUS MATTER WRITTEN THEREON THAT TENDS TO INJURY OF PRISONER.

Where the judge inadvertently writes the word "*guilty*" on the margin of an instruction given to the jury, and permits the instructions thus written upon to be taken by the jury to their room: *Held*, (1) that the presumption is that the extraneous word was read by the jury, unless the contrary was clearly shown; (2) that as the writing of such word by the judge was capable of and tended towards influencing the jury detrimentally to the defendants, that the presumption was that it did so influence them unless the contrary was clearly shown; and that the burden was upon the State to show beyond a reasonable doubt that such writing upon the charge was not read by the jury; or, if read by them, that it did not result in injury to the defendants; and (3) that such word written upon the charge and sent with the jury to their room, was reversible error, unless it clearly appeared that no injury resulted to the defendants therefrom.

Writ of Error to the Circuit Court for Polk county.

The facts of the case are stated in the opinion of the court.

*J. W. Brady* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

TAYLOR, J. :

The plaintiffs in error were tried and convicted at the Spring term, 1893, of the Circuit Court for Polk county; Samuel Hawkins for murder in the second degree, and Howard Hawkins, as accessory, of the same crime, and both were sentenced to the State prison for life. Upon the refusal of their motion for new trial they bring writ of error here. Various errors are assigned, but we deem it unnecessary to notice any of them except the 5th, which is, that the court erred in writing the word "guilty" on the margin of one of the instructions given to the jury, and then permitting the charges, thus written upon, to be taken by the jury to their room. This error was also one of the grounds of the motion for new trial. It is conceded here that the writing of the word "guilty" by the judge below upon the margin of the instruction was done entirely through inadvertence, and that the word intended to be written was "given," as the instruction opposite to which the word "guilty" was written was in fact given by the court to the jury at the request of the defendant's counsel. But, however absent-mindedly or unintentionally it was written upon the charge, the question for our consideration is, was it, in the hands of the jury in their room, calculated to injuriously affect the defendants? We think that it was. There are but two words—"guilty"—"innocent"—that we know of in the English vocabulary, that, when put singly and alone before the eyes of the jury, can so completely and effectually sum up and convey to their minds the conclusions of the judge upon the entire testimony in the case. Had he written the one word "innocent" on the charge, the

thought conveyed thereby would have been, these people are innocent, the proofs are insufficient to establish their guilt. On the other hand the writing of the word "guilty" was tantamount to saying the proofs are ample to establish their guilt, in my judgment they are guilty; either of which declarations would have been an unwarranted invasion by the court of the exclusive province of the jury to pass upon the facts. Though the jury may have been impressed with the idea that the writing of the word was unintentional on the judge's part, and due to absent-mindedness, even then it was calculated to convey to their minds the idea that the judge inadvertently gave expression to that which was uppermost in his mind; all of which was seriously harmful to the defendants. The writing of this word by the court upon the margin of the charge and then sent with the jury to their room, to say the least, was so wide a deviation from the ordinary proceedings and forms provided by law for the securement to the defendants of a fair and impartial trial, that they were entitled to require at the hands of the State satisfactory evidence that they had not been injured by reason of such departure from the usual forms, and the burden was not upon them to show affirmatively that such departure had been the probable cause of their conviction. As it is expressed by Judge Parker in State vs. Prescott, 7 N. H., 287: "The shield which the law has provided would fall far short of affording him the protection intended, if it might be thrown aside at pleasure, and he have no right to complain, unless he could prove that the want of it had been actually prejudicial to his case—a matter which it might in many cases be very difficult to prove, notwithstanding such was the fact. He has the right, therefore, to call upon the officers of the

government, in such case, before they demand judgment, to show that the irregularity in the trial has not been the means of injustice in the verdict. As the law humanely presumes his innocence, in the first instance, until his guilt has been proved beyond a reasonable doubt, so it will presume that a departure from the mode prescribed by the law for his trial has. been to his prejudice, until the contrary is shown by the same degree of evidence." Jumpertz vs. People, 21 Ill., 375; Sims vs. State, 43 Ala., 33. The fact being admitted that the charges, with this endorsement on the margin thereof, were in the hands of the jury during their deliberations, the presumption is that it was read by them in the absence of proof to the contrary. Clark vs. Whitaker, 18 Conn., 543; Durfee vs. Eveland, 8 Barb., (N. Y.), 46.

From these conclusions, the judgment of the court below is reversed, and a new trial ordered.