CLARK *against* WHITAKER and others.

Where a paper which had been put into the hands of a witness, to refresh his recollection on the subject of his testimony, but was not read or offered in evidence, nor were its contents made known to the adverse party or his counsel, was, through mistake, placed with the papers belonging to the cause in possession of the jury, and was before them, in all their deliberations, and was calculated to affect the verdict; it was held, that this was a sufficient ground for arresting judgment.

Where *B* held mortgages of *A's* personal property, by the terms of which *B* was authorized to sell such property, and apply the avails to the payment of the mortgage debts; *B* took possession of the property, and sold it, and applied the avails accordingly; in an action of trover, brought by *A* against *B*, it was held, that *B* had a right thus to take possession and dispose of the property, and consequently, that the action brought could not be sustained.

Where *F* was duly appointed an overseer of *A* in the first stage; *A* was, shortly aferwards, sent to an insane hospital in another state, and a few days after this event, while *A* remained there, *F* was appointed overseer of *A* in the second stage; it was held, that *A*, by such removal, had not changed his domicil or residence, and consequently, the latter appointment was not obnoxious to the objection that *A* was not then an inhabitant of the town in which such appointment was made.

*It seems,* that if a true and perfect inventory of the ward's property be lodged, by the overseer in the second stage, in the town-clerk's office, though not attested or signed by such overseer, it is a sufficient compliance with the statute.

THIS was an action of trover, for certain articles of household furniture. The cause was tried, at *Brooklyn, January* term 1847, before *Williams*, Ch. J.

The articles in question were part of the furniture of a public house in the city of *Norwich*, called the *American House*; which articles were originally the property of the plaintiff.

*A. G. Frink*, having been appointed, on the 24th of *July* 1844, an overseer of the plaintiff in the first stage, was, on the 16th of *August* 1844, appointed his overseer in the second stage. He declined to act under this appointment; and on the 27th of *August, Edmund Perkins* Esq., one of the defendants, was appointed in his stead, and accepted the appointment. On the 12th of *August* 1844, the plaintiff was sent to *Worcester, Mass.*, for the purpose of being placed in the *Insane Hospital* in that place, and was there, when said appointments of overseer in the second stage were made.

Prior to and at the time when the property was taken, *Horace Whitaker*, one of the defendants, held mortgages on

large portions of it, to secure the payment of debts due to him from the plaintiff. By the terms of these mortgages, the mortgagee was authorized to sell the property, and apply the proceeds to the payment of such debts. The defendants claimed, that all the articles taken by them were disposed of, either by *Whitaker*, in pursuance of these mortgages, or by *Perkins*, as overseer, in the discharge of his duties in that capacity, and that the proceeds were faithfully applied to the payment of the plaintiff's debts. A paper containing a list of sundry articles of personal property was exhibited on the trial, and claimed by the defendants to be a true and perfect inventory of the articles taken by *Perkins*, as overseer, and lodged in the town-clerk's office; but this paper was not signed by him, and had no authentication on its face.

The plaintiff claimed, 1. that *Whitaker* did not enter into possession of the property, and take it and dispose of it, *as mortgagee;* and that his mortgages, therefore, afforded him no protection: 2. that the appointment of *Frink*, as overseer in the second stage, was irregular and void; first, because the plaintiff had no residence in *Norwich*, when the appointment was made; and secondly, because he had no such notice as the law requires: 3. that *Perkins*, being appointed in *Frink's* stead, could have no greater authority than *Frink* had: 4. that *Perkins* failed to make and lodge with the town-clerk a true and perfect inventory of the plaintiff's property.

The matters of *fact* involved in these claims of the plaintiff, were denied by the defendants, who claimed that the reverse thereof was true; and much evidence, oral and documentary, was adduced, by the parties respectively, on these points.

The defendants claimed, and prayed the court to instruct the jury, that the mortgages from the plaintiff to *Whitaker* conferred on him the right by law to take possession of all the property covered by these mortgages, either by himself or by an agent, and to dispose of the same in payment of the debts due to him from the plaintiff, described in such mortgages.

The court omitted to instruct the jury, that under those mortgages the defendant *Whitaker* acquired any right to take possession of, or to dispose of, the property covered by them.

Upon the evidence in the cause, the plaintiff claimed to the jury, that he was entitled to a verdict against all the defendants. The defendants, on the other hand, claimed, that the plaintiff had failed to make out his case against any of them.

The jury rendered a verdict in favour of the plaintiff for 983 dollars, damages, and his costs. The court returned the jury to a second and then to a third consideration ; but the jury adhered to the same verdict ; and the court ordered it to be recorded. The defendants thereupon moved for a new trial, for the omission of the court to give the instruction prayed for by them, and also, because the verdict was palpably against the evidence in the cause, (*a*) and the amount of damages unreasonable and excessive.

The defendants also moved in arrest of judgment, alleging, that a certain paper, which was important and material to the issue between the parties, was taken by the jury, with other papers belonging to the cause, and was before them in all their deliberations, and had a controuling effect on their verdict ; which paper was never read, nor offered in evidence, on the trial of the cause ; nor were the contents thereof ever seen by, or shown to, the defendants, or either of them, or their counsel in the cause ; it having been placed, by the plaintiff's counsel, in the hands of two of the witnesses called by him, to refresh their recollection regarding the subjects of their testimony.

The court found, that the paper referred to in the motion in arrest, was, through mistake of counsel, placed, with the papers belonging to the cause, in the possession of the jury, and was before them in all their deliberations, and was calculated to affect the verdict ; that it was never read, or offered in evidence, on the trial of the cause ; nor were the contents thereof made known to the defendants, or their counsel, or either of them ; that it was put into the hands of two of the plaintiff's witnesses, to refresh their recollections as to its contents, and as to the particular articles of furniture and other

(*a*) This was treated, by the counsel on both sides, as the great point in the case ; and all the evidence, which was voluminous, was detailed in the motion ; but as there was no decision upon it, by the court, the reporter has deemed it sufficient to state only such uncontroverted facts as are necessary to render the opinion given upon the other points, and the allusions contained therein, intelligible.

property in and about the *American House,* which were demanded by the plaintiff.

The questions arising on this motion, as well as on the motion for a new trial, were reserved for the advice of this court.

*Strong* and *Foster,* in support of the motions, contended, 1. That the motion in arrest, upon the facts alleged and found, ought to prevail. These facts are sufficient to set aside the verdict. *Whitney* v. *Whitman,* 5 *Mass. R.* 405. *Hix* v. *Drury,* 5 *Pick.* 296. 1 *Sw. Dig.* 775. *Benson* v. *Fish,* 6 *Greenl. R.* 141.

2. That upon the uncontroverted facts in the case, the jury should have been instructed, that the defendant *Whitaker* had the right by law to take possession of all the property covered by the mortgages, and to dispose of it in payment of the debts described and due under those mortgages.

3. That the verdict was manifestly and palpably against the evidence in the cause. In the first place, there was no evidence to support an action of *trover.* Justice cannot be done in this action. The property has all been applied to pay the debts of the plaintiff; and the proper remedy is *account,* in which the claims of the parties can be adjusted and settled. Secondly there was no proof of any *joint act* by these defendants. Thirdly, there was no combination, no joint purpose, no union of minds in any act.

4. That the rule of damages, under the circumstances of this cause, is as fixed and positive, as though the action had been *assumpsit,* or on a promissory note, *viz.* the value of the property which went into the hands of the defendants over and above the debts of the plaintiff which were extinguished by it. The amount rendered in the verdict, being altogether beyond this rule, was unreasonable and excessive; and a new trial should be granted on that ground.

*Cleveland* and *Catlin,* (with whom was *Hovey,*) contra, contended, 1. That the charge of the court to the jury was unexceptionable. There were no facts proved, or claimed to be proved, on the trial, to which such a charge as was requested by the defendants, would have been applicable. To have laid the foundation for such a charge, evidence should

have been furnished, which proved, or tended to prove, not only that *Whitaker* had the right, under his mortgages, to take possession of the property and dispose of it, but that he *in fact entered into possession as mortgagee*, and, in that character, sold the property. But it appears by the motion, that no such evidence was furnished; and therefore, the omission of the court to charge the jury on this point, as requested, was proper, unless the defendants have sustained an injury in consequence of it. *Churchill* v. *Rosebeck*, 15 *Conn. R.* 359. *Selleck* v. *Sugar-Hollow Turnpike Co.*, 13 *Conn. R.* 453. *Corbin* v. *Brown*, 14 *Pick.* 306. But secondly, the omission complained of has occasioned no injustice or injury to the defendants; for if the instruction prayed for had been given, the verdict must have been the same as it now is.

2. That the verdict of the jury was not against the evidence in the cause, but was in conformity to it. In the first place, it was shown by the evidence, and admitted by the defendants, that the title to the property in question was in the plaintiff. Here the counsel went into an examination of the evidence in relation to the acts of the defendants *H. L. Clark*, *Whitaker* and *Hall*, claiming that the former, on the 13th of *August* 1844, took possession of the property in his own name, used it in his own name, and appropriated the profits to his own benefit, without the shadow of right or authority; and that *Whitaker* and *Hall* advised and urged *Clark* to do what he did, and agreed to indemnify him. As to *Perkins*, the counsel insisted, that he was equally guilty with the other defendants. He took possession of a considerable portion of the property that was in the *American House*, at the time *H. L. Clark* went into it, which he sold, and paid pretended debts of the plaintiff with the avails. But his appointment as overseer, gave him no authority thus to intermeddle, because it was irregular and void. In the first place, *Frink's* appointment as overseer in the second stage, was invalid, and conferred upon him no authority in addition to that which his first appointment gave him; because the plaintiff had no residence in *Norwich*, on the 16th of *August* 1844, when the appointment was made. *Stratford* v. *Fairfield*, 3 *Conn. R.* 588. And because the plaintiff had no such notice of the application of the select-men for *Frink's* appointment, as the law requires. He had not absconded; and was,

*Windham,*
*July,* 1847.

Clark
*v.*
Whitaker.

therefore, entitled to *actual,* personal notice. *Stat.* 351. *tit.* 50. *s.* 7. *Strong* v. *Birchard,* 5 *Conn. R.* 357. The notice was served only by leaving a copy at the *American House,* on the 16th of *August,* when this was not the plaintiff's usual place of abode. Secondly, *Perkins* being appointed in *Frink's* stead, on the 27th of *August,* he could have no authority, which *Frink* had not, under his appointment. Thirdly, the appointment of *Perkins,* aside from its connexion with that of *Frink,* was invalid, and conferred upon him no power; because at the time it was made, the plaintiff had no residence or place of abode in *Norwich;* and this is a fact which the jury have found. *Stratford* v. *Fairfield,* 3 *Conn. R.* 588. *Lyman* v. *Fisk,* 17 *Pick.* 231. 234. *Harvard College* v. *Gore,* 5 *Pick.* 370. 378. Fourthly, if the appointment of *Perkins* had been legal, his failure to make and lodge with the town-clerk, a true and perfect inventory of the plaintiff's property, would have rendered him liable in this action. There is no evidence that the paper exhibited on the trial, was made, or caused to be made, by *Perkins,* or that it was a true and perfect inventory of the plaintiff's property, which went into his hands. It does not purport to have been made by *Perkins,* is not signed by him, and has no authentication.

3. That a new trial will not be granted in this cause, on the ground of excessive damages. To justify the court in setting aside the verdict on this ground, the damages must be *manifestly exorbitant,* and greatly disproportioned to the injury received. *Bodwell* v. *Osgood,* 3 *Pick.* 379. *Worster* v. *Canal Bridge,* 16 *Pick.* 541. *Parks* v. *Boston,* 15 *Pick.* 198. 206,7. *Stone* v. *Codman, Id.* 297. 300. *Greenfield Bank* v. *Leavitt,* 17 *Pick.* 1. *Weld* v. *Oliver,* 21 *Pick.* 559. *Johnson* v. *Sumner,* 1 *Metc.* 172. *Barnes* v. *Bartlett,* 15 *Pick.* 71. 78. *Sargent* v. *Franklin, Ins. Co.* 8 *Pick.* 90. 100. Where the amount of damages is matter of opinion merely, the fact that the jury had fixed them at a greater or less sum than any witness, is not a ground for a new trial. *Brewer* v. *Tyringham,* 12 *Pick.* 547.

4. That upon the facts found, the motion in arrest should be overruled. In the first place, neither the plaintiff nor his counsel were *in fault,* in passing the paper in question to the jury. Secondly, the paper was not a *material* paper. Third-

ly, it was not calculated, under the circumstances of the case, to *mislead* the jury, or to influence them improperly. *Whitney* v. *Whitman*, 5 *Mass. R.* 405. *Hix* v. *Drury*, 5 *Pick.* 296. 302.

ELLSWORTH, J. We are all of opinion that the motion in arrest is well founded. The judge found, that the paper complained of was before the jury, during all their deliberations, and was calculated to affect the verdict. It certainly was; and nothing short of proof that the paper was not opened and read, could save the verdict. Otherwise, we must disregard first principles, and establish a precedent which may lead to disastrous consequences. The mistake and absence of evil design, on the part of the counsel of the prevailing party, can avail nothing. That which is found to be true, in this case, may be doubtful in the next case; and certainly a door will be opened for evil practices. The jury room cannot be guarded with too much vigilance and jealousy. Courts must reject all evidence not received on the trial, and must repel every foreign influence, which may affect the minds of the jury. If we need authorities to so plain a point, those cited on the argument are conclusive. *Hix* v. *Drury*, 5 *Pick.* 298. *Whitney* v. *Whitman*, 5 *Mass. R.* 405. *Benson* v. *Fish*, 6 *Greenl. R.* 141. 1 *Sw. Dig.* 775.

So, we are all of opinion, that the superior court should have charged the jury, as requested by the defendants, in relation to the mortgages to *Whitaker*. By those mortgages, *Whitaker*, and all who acted under him, had a right to take possession of the articles enumerated in them; and by one of them he is authorized to sell those articles, and pay his debts with the avails. How then can he be sued in trover? At law, the goods and the avails of them belong to him. It was through some inadvertence this error had intervened.

There is another point on which we are not agreed; and therefore, we place our decision on the grounds already stated. We all think, that the appointment of *A. G. Frink* as overseer, on the 24th *July* 1844, is legal; and that this proceeding might be followed up and perfected, by the appointment of an overseer in the second stage, notwithstanding the objection that the plaintiff was not an inhabitant of *Norwich* during the latter part of said proceeding. We do not think

the party had changed his domicil or residence ; nor, if he had, that he could interrupt the proceeding.

We express no opinion upon the question of notice.

We are inclined to think, that *Perkins* complied with the statute in leaving a true and perfect inventory of the estate of the plaintiff in the office of the town-clerk.

We advise a new trial.

In the opinion thus expressed the other Judges concurred.

New trial to be granted.