ADRIA ESAW *v.* STEPHEN C. FRIEDMAN ET AL.
(13865)

SHEA, GLASS, HULL, BORDEN and F. X. HENNESSY, Js.

Argued December 14, 1990—decision released February 26, 1991

*Dennis M. Laccavole,* for the appellant (plaintiff).

*J. Kevin Golger,* for the appellees (defendants).

BORDEN, J. The principal issues of this appeal are whether jurors may be permitted to take notes during a trial and, if so, whether the trial court is required to preserve those notes for purposes of an appeal. We hold that the trial court has discretion to permit note-taking by the jurors, and that the notes are for the confidential use of the jurors only and should not be preserved.

The plaintiff appeals from the judgment of the trial court rendered upon a jury verdict in her favor in the amount of $2000. The plaintiff claims that the court: (1) improperly permitted the jurors to take notes during the trial and to use those notes during their deliberations;[1] (2) should have marked the jurors' notes for identification; and (3) should have set aside the verdict as inadequate. We affirm the judgment.

---

[1] The plaintiff also alludes in her brief to an alternate claim, namely, that the court improperly instructed the jury in the use of its notes. This claim, however, is made only in the heading of the plaintiff's argument, and the plaintiff's brief is bereft of any further mention of it. Therefore, although we discuss, infra, the nature of the instructions that a trial court should give in connection with note-taking by jurors, we consider the plaintiff's claim of improper instructions to have been abandoned for failure to brief it. *Czarnecki* v. *Plastics Liquidating Co.,* 179 Conn. 261, 262 n.1, 425 A.2d 1289 (1979).

This appeal arose out of an accident in 1985 in which an automobile operated by the named defendant, Stephen C. Friedman,[2] struck an automobile operated by the plaintiff, Adria Esaw, from the rear. The plaintiff had slowed down for traffic prior to entering the Connecticut Turnpike from an entrance ramp. The plaintiff claimed that as a result of the defendant's negligence she suffered the following injuries: acute injury to her cervical and lumbar spine; severe headaches, vertigo and nausea; severe pain and numbness in her arms, shoulders and chest, radiating into her legs, knees and feet; and an aggravation of a prior neck and back injury. The jury answered interrogatories finding the defendant negligent, and the plaintiff 20 percent contributorily negligent.[3] The jury awarded damages of $2500 to the plaintiff, reduced by $500 attributable to her contributory negligence, for a net award of $2000. The plaintiff moved to set aside the verdict claiming, inter alia, that the verdict was inadequate and that the court should not have permitted the jurors to take notes during the trial or to take those notes into the jury deliberation room.[4] The plaintiff also moved for an additur. The court denied the motions and rendered judgment in accordance with the verdict. The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023.

[2] The named defendant was operating a vehicle owned by his mother, Barbara Friedman, whom the plaintiff sued under the family car doctrine. We refer herein to the named defendant as the defendant.

[3] The defendant had filed a special defense of contributory negligence, alleging that the plaintiff stopped her vehicle suddenly without giving a signal or warning.

[4] The plaintiff also claimed in her motion to set aside the verdict that the court should not have permitted the jurors to ask questions during the trial. The plaintiff has not pursued that claim in this appeal, but we today decide that issue in *Spitzer* v. *Haimes & Co.*, 217 Conn. 532, 587 A.2d 105 (1991).

## I

The plaintiff first claims that the trial court improperly permitted the jurors to take notes during the trial and to use them during deliberations. We disagree.

At the beginning of the trial, the court informed the jurors that they would be permitted to take notes, but cautioned them regarding the proper use of the notes.[5] In its final instructions at the end of the trial, the court again referred to its initial instructions permitting the

---

[5] After informing the jurors that they would be permitted to ask questions of the witnesses, the court stated: "In the first case I did this a couple of months ago. When I spoke with the jurors afterward they said they felt a little frustrated because they were't able to take notes. And the case went over a weekend. Monday we don't try cases because we have motions. And they said, we would like to have been able to jot down our questions because we sort of forgot them. In other words, we had a question in mind and then things went on and on and lunch and so forth. How about giving us some paper so we can make some notes.

"So we are going to do that, have some paper to take notes. Then we run into some jurors [who] try to take a lot of notes, and I sort of try to discourage that and try to sort of suggest to you, although it is up to you, it is your pencil and your paper, but try to suggest to you that you not take a lot of notes. Rather concentrate on the witnesses. You are here to size up these witnesses. It seems to me that if you spend all your time taking notes, detailed notes, you are going to be distracted and not be able to concentrate as much as you should on the witnesses.

"So some of the jurors have basically confined their note-taking to questions that they feel like asking, and of course they tend to sometimes scratch them out because it gets asked by someone else. But as I say, it is up to you but just keep in mind that that is your primary mission.

"The other, I guess you could say hesitancy about letting jurors take notes in the past has been a fear that one juror with some very nice notes would attempt to dominate the discussion and get in the jury room. And there will be a question, did the witness say this, and one juror will say, yeah, I have it right here in my notes. This is it. I'm a great notetaker and this is the way it is. And the decision is supposed to be reached by six people, all reasoning and working together. So that has always sort of been the fear behind not letting jurors take notes. I don't happen to think it holds too much water myself, but that is a little background on the matter of questions and notes."

jurors to take notes and repeated its warnings to them regarding the use of the notes.[6]

Although the plaintiff claims that both she and the defendants objected to the court's initial instruction permitting such a procedure, the record does not reflect any such objection. Furthermore, the plaintiff's only exception to the court's final instruction in this regard was that the court should have made it clearer that the notes were not evidence and were to be used only to refresh the jurors' recollection of the evidence.[7] Thus,

---

[6] The court stated as follows: "I mentioned recollection, and that brings up the question of notes. We said at the beginning of the case that we prefer that you basically concentrate on the witness, and in a sense keep the notes to remind you of questions that you wanted to ask the witnesses, as you've done here. The theory always being, that if a person was too busy making notes, he or she might lose the sense of what the witness was saying. As you know, because we spent some time yesterday, you really have to size up the witnesses. Because you're going to be deciding who to believe, and who not to believe. The thinking has always been, not that you all were—because I know that you all paid attention, to the witness on the stand—but the theory militating against taking notes was that a person would start scribbling ferociously and forget to concentrate on the witness. Not that you've done that.

"But, the other fear was that some notetaker, a good notetaker, a real top notetaker, in the jury room, if you're all sitting around saying 'I think witness X said this, and witness Y said this,' that the top notetaker would say 'Wait a minute, ladies and gentlemen, I've got it down here in my notes. This is it. I'm a great notetaker, and this is exactly what happened.' No further discussion on that. That should not happen, of course.

"It's the 6 jurors. It's their joint recollection of what happens. So in that sense, I suppose, you really don't need your notes, while you're deliberating. But on the other hand, it's up to you. If you think they'd be helpful, please take them with you. But remember, it's your recollection that counts because sometimes notes are not as accurate as we hope they would be.

"So, as I say, you can come back and ask, if there's a question about what a witness has said, don't hesitate to ask."

[7] The plaintiff stated in pertinent part as follows: "With regard to their notes . . . my exception is I think it should have been stronger, I have no objection to [their] taking their notes into the deliberation room if Your Honor tells them in no uncertain terms that their notes are not evidence, their verdict has to be based on the evidence and the law and their notes can be useful insofar as it refreshes their recollection of the evidence."

it is plain that the plaintiff did not raise an objection on the record to the procedure of note-taking by the jurors until she moved to set aside the verdict. Although in other circumstances such a belated objection might preclude review, in this case we exercise our appellate discretion to review the plaintiff's claim because of its importance to the proper management of trials by trial judges. Thus, it is in the interests of justice and the public welfare that the issue be decided. See *Kavanewsky* v. *Zoning Board of Appeals,* 160 Conn. 397, 401, 279 A.2d 567 (1971).

We acknowledge that the long-standing judicial understanding in this state has been to bar jurors from taking notes during a trial and, a fortiori, from using such notes in their deliberations. Although we have been unable to discover any particular Connecticut case or rule of practice as the source of that understanding, it may stem from what has been thought to be a common law rule forbidding such a practice. Yet, the origins of such a common law rule are "as obscure as the origin of the jury itself"; comment, "Taking Note of Note-Taking," 10 Colum. J.L. & Soc. Probs. 565, 574 (1973–74); which has been described by the same commentator as "shrouded in the mists of common law antiquity." Comment, 10 Colum. J.L. & Soc. Probs., supra, 565. " 'In the standard texts on jury trial such as History of Trial By Jury by William Forsyth . . . and Trial By Jury by Robert von Moschzisker, late Chief Justice of Pennsylvania, nothing can be found as to the origin or reason for this rule.' 55 Dick. L. Rev. 335 (1951)." Comment, 10 Colum. J.L. & Soc. Probs., supra, 574 n.43.

The origin of the understanding in this state may lie in an overly broad reading of *Clark* v. *Whitaker,* 18 Conn. 543 (1847), on which the plaintiff in this case relies. In that case, a document used to refresh the recollection of two witnesses, but never introduced into

evidence, was mistakenly given to the jury and affected the verdict. Id., 545. The court stated: "The jury room cannot be guarded with too much vigilance and jealousy. Courts must reject all evidence not received on the trial, and must repel every foreign influence, which may affect the minds of the jury." Id., 549. This court reiterated that principle in *Gimelli* v. *Waterbury Cadillac Co.,* 109 Conn. 722, 727, 145 A. 563 (1929), where certain preliminary pleadings were mistakenly given to the jury. Neither *Clark* nor *Gimelli,* however, can properly be read as bearing on the issue of note-taking by jurors; it can hardly be said that a juror's own notes, reflecting the thoughts or questions that may have arisen in his mind during the trial or reflecting his attempts to preserve in writing his recollections of the evidence, constitute a "foreign influence, which may affect the minds of the jury." *Clark* v. *Whitaker,* supra.

Whatever the source of that understanding, however, we now abandon it, and conclude that a trial court has discretion to permit jurors to take notes during the trial. We reach that conclusion on the basis of three considerations: (1) the overwhelming weight of authority supporting such discretion; (2) a critical evaluation of the arguments for and against such a procedure; and (3) sound judicial policy and our abiding faith in the common sense of jurors.

The vast majority of jurisdictions that have considered the issue entrust the decision of whether jurors should be permitted to take notes to the sound discretion of the trial court. The federal courts are virtually unanimous;[8] and our sister states nearly

[8] See *United States* v. *Oppon,* 863 F.2d 141, 148–49 (1st Cir. 1988) (practice within trial court's discretion); *United States* v. *Vaccaro,* 816 F.2d 443, 451 (9th Cir.), cert. denied sub nom. *Alvis* v. *United States,* 484 U.S. 914, 108 S. Ct. 262, 98 L. Ed. 2d 220 (1987) ("decision of whether to allow the jury to take notes is left entirely to the discretion of the trial court"); *United States* v. *Polowichak,* 783 F.2d 410, 413 (4th Cir. 1986) (matter is within

so.[9] Indeed, the American Bar Association Standards
for Criminal Justice provide that jurors should have the

discretion of trial court); *United States* v. *Porter,* 764 F.2d 1, 12 (1st Cir.),
reh. denied, 776 F.2d 370 (1985) (citing long list of authorities in support
of note-taking per court's discretion); *United States* v. *Bassler,* 651 F.2d
600, 602 n.3 (8th Cir.), cert. denied sub nom. *Sprecher* v. *United States,*
454 U.S. 944, 102 S. Ct. 485, 70 L. Ed. 2d 254, reh. denied, 454 U.S. 1129,
102 S. Ct. 983, 71 L. Ed. 2d 118 (1981) (discretion of trial court); *United
States* v. *Rhodes,* 631 F.2d 43, 45 (5th Cir. 1980) (discretion of trial court;
long list of authorities cited); *United States* v. *Maclean,* 578 F.2d 64, 65–67
(3d Cir. 1978) (matter left to discretion of trial judge; weighing of benefits
to practice); *United States* v. *Bertolotti,* 529 F.2d 149, 159 (2d Cir. 1975)
("[i]t has long been established in this Circuit that it is within the trial court's
discretion to allow the jury to take notes and use them in the course of
their deliberations").

[9] See *Reece* v. *Simpson,* 437 So. 2d 68, 69 (Ala. 1983) (Pattern Jury Instruc-
tion 1.15, APJI-Civil, gives jurors legal right to take notes during trial);
*State* v. *Marquez,* 135 Ariz. 316, 321, 660 P.2d 1243 (1983) (Arizona Rules
of Criminal Procedure 18.6 [c]; preliminary instruction provides jurors with
permission to take notes); *People* v. *Guzman,* 45 Cal. 3d 915, 948, 755 P.2d
917, 248 Cal. Rptr. 467 (1988), cert. denied, 488 U.S. 1050, 109 S. Ct. 882,
102 L. Ed. 2d 1005, reh. denied, 493 U.S. 960, 110 S. Ct. 380, 107 L. Ed.
2d 365 (1989) (implicit statutory authorization for jurors to take notes); *Bill-
ings* v. *People,* 171 Colo. 236, 244–45, 466 P.2d 474 (1970) (matter of juror
note-taking within sound discretion of court); *Kelley* v. *State,* 486 So. 2d
578, 583 (Fla.), cert. denied, 479 U.S. 871, 107 S. Ct. 244, 93 L. Ed. 2d
169 (1986) (whether to allow jurors to take notes and use them during delib-
eration is question within sound discretion of trial court); *Post-Tensioned
Construction, Inc.* v. *VSL Corporation,* 143 Ga. App. 148, 149, 237 S.E.2d
618 (1977) ("[t]he regulation of a juror's note-taking is addressed to the
sound discretion of the trial court"); *Estate of Whittington* v. *Emdeko House-
wares,* 96 Ill. App. 3d 1007, 1014, 442 N.E.2d 26 (1981) (no cases forbid-
ding note-taking by a juror of his own volition; counsel cannot request or
suggest a jury take notes; "statute [Ill. Rev. Stat. (1979) c. 78, ¶ 36] appears
to grant jurors an absolute right to take notes"); *Underwood* v. *State,* 535
N.E.2d 507, 518 (Ind.), cert. denied, 493 U.S. 900, 110 S. Ct. 257, 107 L.
Ed. 2d 206, reh. denied, 493 U.S. 985, 110 S. Ct. 524, 107 L. Ed. 2d 524
(1989) (juror note-taking is matter within discretion of trial court and clear
error must be shown to establish an abuse of that discretion); *State* v. *Post,*
286 N.W.2d 195, 202–203 (Iowa 1979) (jurors may disclose to each other
contents of their notes); *State* v. *Jones,* 222 Kan. 56, 61, 563 P.2d 1021 (1977)
("the fact a juror takes notes during trial does not create error per se; a
defendant must show that there has been prejudice of his substantial
rights"); *Travis* v. *Commonwealth,* 457 S.W.2d 481, 482 (Ky. 1970) (juror
note-taking should be encouraged); *Dillon* v. *State,* 27 Md. App. 579, 581–84,

right to do so even without the permission of the trial judge. "Jurors may take notes regarding the evidence presented to them and keep these notes with them when they retire for their deliberations. Such notes should be treated as confidential between the juror making them and the other jurors." III A.B.A. Standards for Criminal Justice (2d Ed. 1980) § 15-3.2. The commentary to this section states that "[t]he thrust of this standard is to permit note taking by jurors as a matter of right without permission of the court." III A.B.A. Standards for Criminal Justice, supra, § 15-3.2;

342 A.2d 677 (1975), aff'd, 277 Md. 571, 357 A.2d 360 (1976) (within discretion of trial court to allow juror note-taking); *Commonwealth* v. *Wilborne,* 382 Mass. 241, 253, 415 N.E.2d 192 (1981) (within discretion of trial court to permit note-taking); *People* v. *Young,* 146 Mich. App. 337, 340, 379 N.W.2d 491 (1985) (practice is within sound discretion of trial court; "the advantage of note-taking outweighs the dangers of that practice"); *Wash* v. *State,* 521 So. 2d 890, 897 (Miss. 1988) (practice left to discretion of trial court where matters complicated or parties agree; judge should give directions and instructions on use of notes); *State* v. *Jones,* 661 S.W.2d 814, 816 (Mo. App. 1983) ("[a] trial court's approval or denial of a juror's note-taking in any particular case is usually sustained as being a matter within its discretion"); *State* v. *Kipf,* 234 Neb. 227, 254, 450 N.W.2d 397 (1990) (note-taking permitted "if, and only if, the parties agree, outside the jury's presence, [1] that jurors may, but need not, take notes, and [2] that such notes as are taken may be used during the jury's deliberations but not preserved for review on appeal . . ."); *Wigler* v. *Newark,* 125 N.J. Super. 179, 182–83, 309 A.2d 897 (1973), cert. denied, 64 N.J. 490, 317 A.2d 703 (1974) (nothing improper in a juror taking notes; practice within trial court's discretion); *People* v. *DiLuca,* 85 App. Div. 2d 439, 445, 448 N.Y.S.2d 730 (1982) (practice within discretion of trial court, but "it is essential that preliminary cautionary instructions be given . . ."); *Cleary Petroleum, Inc.* v. *Copenhaver,* 476 P.2d 327, 329 (Okla. 1970) (juror note-taking not error); *State Highway Department* v. *J. W. Conder Co.,* 262 S.C. 318, 325, 204 S.E.2d 381 (1974) (matter within discretion of trial court); *State* v. *Chance,* 778 S.W.2d 457, 462 (Tenn. Crim. App. 1989) (juror note-taking rests within discretion of trial court); *Davis* v. *Huey,* 608 S.W.2d 944, 955 (Tex. Civ. App. 1980), rev'd on other grounds, 620 S.W.2d 561 (Tex. 1981) (no prohibition in rules of civil procedure concerning jurors taking notes); *but see* *Commonwealth* v. *Maute,* 336 Pa. Super. 394, 404, 485 A.2d 1138 (1984) ("[u]nder Pennsylvania law, it is improper for a juror to take notes during a trial and to use those notes in the jury room").

id., commentary, p. 15.84. By contrast, rule 513 (e) of the Uniform Rules of Criminal Procedure leaves the matter to the trial court's discretion. See III A.B.A. Standards for Criminal Justice, supra.

The principal arguments against such a procedure are that: (1) the best note-taker will dominate the jury; (2) since jurors are not trained in note-taking, they will focus on trivial matters to the detriment of vital facts; (3) a dishonest juror may falsify his notes; (4) debate within the deliberation room over whose notes are more accurate will detract from the deliberation process; and (5) the process of taking notes will distract jurors from watching and listening to the witnesses and will cause them to miss testimony. III A.B.A. Standards for Criminal Justice, supra, p. 15.85; D. Petroff, "The Practice of Jury Note Taking—Misconduct, Right, or Privilege?" 18 Okla. L. Rev. 125, 130 (1965).

Each of these arguments, however, carries with it a legitimate response. (1) It is likely that certain jurors will be more influential with their colleagues than others in any event, and unlikely that the process of note-taking alone will distort the deliberative process. (2) Jurors are no less trained in note-taking than people in other walks of life who often rely on notes to record and recollect their perceptions, and the risk that a case may turn on an imperfect or faulty set of notes is no greater than that it may turn on an imperfect or faulty memory. (3) A dishonest juror may equally "falsify" his memory, and the presence of the other jurors' notes may well be more persuasive in correcting that falsity. (4) There is no more risk that jurors' notes will prompt debate over whose notes are better than reliance solely on the jurors' memories will prompt debate on whose memory is better. (5) The risk that taking notes may distract a juror is no greater than the possibility that taking notes may increase the juror's attention to the testimony.

We need not decide whether, in the abstract, the risks involved in the process of note-taking by jurors outweigh or are outweighed by the benefits that may flow therefrom. We are convinced "that the benefits are substantial enough to allow trial judges to decide, in each case, whether note-taking should be permitted." *United States* v. *Maclean,* 578 F.2d 64, 66 (3d Cir. 1978). We are also convinced, as was the court in *United States* v. *Maclean,* supra, that "the dangers of note-taking can be substantially avoided by proper instruction to the jury." The court should instruct the jurors that their notes are merely aids to their memories and should not be given precedence over their independent recollection of the evidence, that a juror who has not taken notes should rely on his recollection of the evidence and should not be influenced by the fact that other jurors have done so, and that they should not allow their note-taking to distract them from paying proper attention to the evidence presented to them. Id.[10] The trial court's instructions in this case sufficiently conveyed these cautions. See footnotes 5 and 6, supra.

Finally, considerations of sound judicial policy and faith in the common sense of jurors lead us to conclude that a trial judge should have the discretion to permit such a procedure. The human memory is fallible, and notes may significantly aid in recalling evidence. Judges sitting as trial courts routinely take notes, as do students, business persons, journalists and people in all walks of life who are intent on being able to recall later the specifics of what they see and hear. As a matter of ordinary human experience, we usually have no compunctions about the ability of these people to engage

---

[10] Although we discuss the issue of the confidentiality of the jurors' notes in Part II of this opinion, we note here that we also agree with the suggestion of the court in *United States* v. *Maclean,* 578 F.2d 64, 66 (3d Cir. 1978), that the court should make clear to the jurors that they must not disclose the contents of their notes except to their fellow jurors.

in the process and use its product appropriately. There is no valid reason to treat jurors, who after all are chosen from the same pool of experience, any differently. Furthermore, we today have held that it is within the trial court's discretion to permit jurors to ask questions of witnesses. See *Spitzer* v. *Haims & Co.*, 217 Conn. 532, 587 A.2d 105 (1991). Permitting jurors to take notes may aid them in preserving for their own memories those questions that they may wish to pose, as the trial court specifically recognized in this case. See footnotes 5 and 6, supra.

Applying these principles to the facts of this case, we conclude that the trial court was within its discretion in permitting the jurors to take notes. The plaintiff does not claim, nor do we perceive, any abuse of that discretion.

II

The plaintiff next claims that the trial court improperly refused to preserve the jurors' notes for purposes of appellate review. Relying on the familiar principle that a trial court has no discretion to refuse to mark an exhibit for identification; see, e.g., *State* v. *Silva*, 201 Conn. 244, 253, 513 A.2d 1202 (1986); *Duncan* v. *McTiernan*, 151 Conn. 469, 470, 199 A.2d 332 (1964); she argues that this refusal was manifestly improper requiring reversal because it deprived her of the ability to demonstrate on appeal that the notes improperly affected the verdict. This claim is without merit.[11]

First, the plaintiff's argument incorrectly assumes that there would be something improper about the notes of the jurors affecting the verdict. Implicit in our conclusion in Part I of this opinion that the jurors were

[11] The plaintiff properly preserved this claim for appeal. The defendants requested that the court collect and preserve the jurors' notes, and the plaintiff specifically joined in that request and in the defendants' exception to the refusal of the trial court to do so.

properly permitted to take notes, however, is the expectation that, having done so, they were likely to use them in their deliberations, and that such a use would be proper.

Second, collecting and preserving jurors' notes would be inconsistent with the purpose of permitting jurors to take notes in the first place. That purpose is to enable any individual juror, if he sees fit, to make a private, confidential written record of his thoughts, perceptions and questions so that he may better be able to recall the evidence and to engage in deliberations at the appropriate time. That is the reason the authorities have held that the notes are confidential to their maker and only to be disclosed to the other members of the jury. See *United States* v. *Maclean,* supra, 66. Requiring that the notes be preserved would create the impermissible risk that jurors who wish to take notes would be inhibited from doing so.

Third, the plaintiff's argument founders on the well established rule " 'which excludes, as immaterial, evidence as to the expressions and arguments of the jurors in their deliberations *and evidence as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict.*' " (Emphasis added.) *Aillon* v. *State,* 168 Conn. 541, 550, 363 A.2d 49 (1975), quoting C. McCormick, Evidence (2d Ed.) § 68, pp. 148–49. Thus, jurors may not, in the context of an attempt to set aside a verdict on the ground of improper jury conduct, give testimony that implicates their mental processes; *Aillon* v. *State,* supra, 551–52; which are insulated from the scrutiny of others. Examining the notes they took during the course of the trial would be a direct threat to the proper insulation of those processes. If the notes may not be examined, therefore, they should not be preserved and collected.

Thus, the reliance of the plaintiff on the cases requiring a trial court to mark objects or documents for identification is misplaced. "The purpose of marking an exhibit for identification is to preserve it as part of the record and to provide an appellate court with a basis for review." *Kraus* v. *Newton,* 211 Conn. 191, 194–95, 558 A.2d 240 (1989). At least in the absence of a showing of some extraordinary circumstance, there is no basis for appellate review of jurors' notes. To say, as the plaintiff's argument suggests, that she should be permitted to examine them, or that the court on appeal should examine them, in order to determine whether they improperly affected the verdict would be to violate the sanctity of the jurors' deliberative process. We decline to do so.

## III

The plaintiff's final claim, namely, that the verdict was inadequate as a matter of law, requires little discussion. The plaintiff argues that the award was sufficiently low so as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption, particularly since the jury answered a particular interrogatory that her injuries were caused by the defendant's negligence. We disagree.

We give great weight and every reasonable presumption to the trial court's refusal to set aside a verdict in response to a claim of inadequacy of the verdict. *Todd* v. *Glines,* 217 Conn. 1, 5, 583 A.2d 1287 (1991). The test is whether the award falls within the uncertain limits of just damages or whether it is so inadequate that it shocks the sense of justice and compels the conclusion that it was the product of partiality, prejudice, mistake or corruption. Id., 5–6.

We have fully reviewed the record in this case. Suffice it to say that the extent and source of the plaintiff's injuries were seriously contested. There was

ample evidence, which the jury was entitled to credit, that many of the plaintiff's injuries were the result, not of the accident caused by the defendant in 1985, but of a prior motor vehicle accident in 1980, and that the defendant's negligence in 1985 did not aggravate those injuries.

Nor do the jury's answers to the special interrogatories help the plaintiff. The plaintiff claims that "the jury specifically found, in answering interrogatory number [2][12] in the affirmative, that the plaintiff's *injuries* (plural) were proximately caused by the negligence of the defendant." (Emphasis in original.) It is true that the jury answered in the affirmative to interrogatory number 2: "Did the plaintiff prove that one or more of the proven specifications of negligence was a proximate cause of (that is, a substantial factor in causing) her injuries?" It is also true, however, as the defendant responds, that the jury did not specifically find what claimed injuries were proven to have been caused by the defendant's negligence. This response of the jury is not inconsistent with a finding that only some of the injuries that the plaintiff claimed were in fact caused by the 1985 accident. In short, we cannot conclude on this record that the verdict was so inadequate that it shocks the sense of justice and compels the conclusion that it was the product of partiality, prejudice, mistake or corruption.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[12] The plaintiff inadvertently referred in her brief to interrogatory number 4, rather than number 2. It is clear, however, that this is a typographical error, since the response to interrogatory number 2 is the only response that is consistent with the context of the plaintiff's argument. Indeed, the response to interrogatory number 4 undercuts the plaintiff's argument.