**Hampton R. MURPHY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 94–CF–989.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1995.
Decided Feb. 8, 1996.

---

Peter H. Meyers, Washington, DC, appointed by the court, for appellant.

Renate D. Staley, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Appellant was convicted of assault, carrying a pistol without a license, and perjury. His convictions were based on an incident that involved the shooting of Pernell Gibson, and on appellant's testimony to the grand jury that was investigating the incident. Appellant argues that the trial court erred in permitting the jurors at his trial to take notes and to use them in their deliberations. We follow binding precedent establishing that trial courts in this jurisdiction have discretion to permit jurors to take and use notes at criminal trials, and hold that the trial court did not abuse its discretion in this case. Appellant also challenges the sufficiency of the evidence under the so-called "two witness" rule to support his conviction for perjury before the grand jury.[1] We hold that

---

1. Appellant also challenges the sufficiency of the evidence to convict him of aiding and abetting the assault on Gibson. This argument is merit-

less. We have held in several cases that "traveling with a principal to the scene of a crime, remaining at the scene during commission of the

sufficient evidence was presented to satisfy that rule, properly understood. Accordingly, we affirm.

# I.

On February 12, 1991, appellant was with Everett Allen, Julian Riley, Linwood Davis, and Dwayne Corley. The five men were close friends who saw each other almost every day. On the day in question, they were in Allen's room, playing a video game and passing around Allen's gun, when Allen received a telephone call. After hanging up, Allen was noticeably excited and upset, and said that he was going to go fight Pernell Gibson. Allen handed the gun to Riley and left the room, followed by appellant and the other men.

The five men walked to the corner of North Capitol and Bates Streets. Davis left the group on the corner and went to a nearby carry-out restaurant and video store, and then exited, accompanied by Gibson. Allen approached and struck Gibson, and a fight ensued. A crowd gathered, and appellant and the other three men positioned themselves in a circle around the fight to keep others from interfering. During the fight, Riley took out the gun that had been in Allen's room, and shot Gibson in the head. Riley then put the gun into his pants and left the scene. Appellant, Davis, Corley, and Allen met back at Allen's house. They contacted Riley, and the five men drove together to a hotel in Virginia, where they spent the night and watched television for news of the shooting. In the succeeding days, the five men, including appellant, agreed among themselves to deny being present at the scene of the shooting.

Appellant, Riley, Davis, and Corley testified before the grand jury. Those four, along with Allen, were indicted. Before trial, Corley entered a guilty plea and agreed to testify for the government. The case proceeded to a joint trial against the four remaining co-defendants, including appellant. Appellant was charged with perjury in violation of D.C.Code § 22–2511(a)(1) based on his grand jury testimony, as well as assault on Gibson with intent to kill while armed in violation of D.C.Code §§ 22–501, 22–3202, mayhem while armed in violation of D.C.Code §§ 22–506, 22–3202, possession of a firearm during a crime of violence in violation of D.C.Code § 22–3204(b), and carrying a pistol without a license in violation of D.C.Code § 22–3204(a).

At the beginning of the trial, over objection by appellant, the court instructed the jurors that they were permitted, but not required, to take notes, and that they could use the notes in their deliberations. The court admonished the jurors not to take notes "if you think that note taking might distract your attention from the evidence or the testimony of the witnesses in this case." The court further instructed the jurors that their notes should be used to aid their memory rather than to take precedence over their independent recollections of the evidence, and that those jurors who did not take notes should rely on their own memories and not be influenced by the fact that other jurors did take notes.[2] At the close of the evidence,

crime and fleeing with the principal are sufficient facts to underpin a conviction for aiding and abetting." *Gayden v. United States*, 584 A.2d 578, 583 (D.C.1990) (citations omitted), *cert. denied*, 502 U.S. 843, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991); *see also Settles v. United States*, 522 A.2d 348, 356–58 (D.C.1987); *Creek v. United States*, 324 A.2d 688, 689 (D.C.1974) (per curiam); *In re T.J.W.*, 294 A.2d 174, 176 (D.C. 1972).

2. The court instructed the jury as follows:

Now, as you took your seats you found a notebook and pencil waiting for you. That is because I will permit jurors in this case to take notes during the trial if you wish to do so. And you may have your notes with you during your deliberations. Now, I want to emphasize, none of you *is* required to take notes. Indeed you should not do so if you think that note taking might distract your attention from the evidence or the testimony of the witnesses in this case.

On the other hand, if you think that taking notes might better focus your attention on the witnesses and the evidence, or might better help you to recall what went on during the trial, you may feel free to take notes. You should remember that your notes are only intended to be a help to your memory. They should not take precedence over your own independent recollection of the evidence.

Moreover, those jurors who do not take notes should rely on their own memory of the evidence, and should not be influence[d] by the fact that another juror has taken notes. Since

the court reiterated its note-taking instruction.[3] The trial court's instructions were virtually identical to those set out in

*Yeager v. Greene,* 502 A.2d 980, 988–89 n. 4 (D.C.1985).[4]

Appellant was convicted of perjury, simple assault (which was submitted to the jury as a lesser-included-offense of assault with intent to kill), and carrying a pistol without a license. Appellant was acquitted of the other charges against him. He now appeals his convictions.[5]

## II.

■ Appellant argues that the trial court erred in permitting jurors to take notes at the trial and to use their notes during deliberations. Forty-five years ago, the United States Court of Appeals for the District of Columbia Circuit, rejecting a somewhat similar challenge from an appellant in a criminal case, stated that jury note-taking is a matter "for the sound discretion of the trial court."

*Goodloe v. United States,* 88 U.S.App.D.C. 102, 102–03, 188 F.2d 621, 622 (1950), *cert. denied,* 342 U.S. 819, 72 S.Ct. 35, 96 L.Ed. 619 (1951). That ruling is binding on us, *see M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971), and therefore, although we ourselves never before have had occasion to expressly address the issue,[6] that decision represents the established law of this jurisdiction.

This same rule has been adopted by the vast majority of state and federal jurisdictions that have considered the issue. *See, e.g., Esaw v. Friedman,* 217 Conn. 553, 586 A.2d 1164, 1167–68 & nn. 8–9 (1991) (collecting cases); Annotation, *Taking and Use of Trial Notes by Jury,* 14 A.L.R.3d 831 (1967 & Supp.1995). Although criticisms have been leveled against jury note-taking, it is generally concluded that "the benefits are substantial enough to allow trial judges to decide, in each case, whether note-taking should be permitted." *United States v. Maclean,* 578 F.2d 64, 66 (3d Cir.1978); *see gen-*

the notes are only for the note-taker's person[al] use in refreshing his or her memory of the evidence.

Whenever there is a recess during the trial, please leave your notebooks and pencils ... on your seats. They will be left there during short recesses, when I remain on the bench or the courtroom is locked. And they will be collected during overnight recesses, and I will keep them in chambers myself. At no time during or after the trial will anyone, including me, look at any of your notes ...

At the end of the trial after you have finished your deliberations, I will ask each of you to return your notebooks to me, and I will destroy any notes immediately. Again, after the return of the verdict, neither I nor anyone else will look at any notes you have or have not taken.

3. The court stated:

I remind you that during this case I have permitted those jurors who want to to take notes. You will be permitted to take your notes with you into the jury room and use them during your deliberations if you wish. As I told you at the beginning of trial your notes are only intended to be aids to your memories and should not take precedence over your own independent recollections. Those jurors who have not taken notes should rely on their own memory of the evidence and should not be influenced by the fact that another juror may have taken notes since the notes are only for the notetaker's own personal use in assisting his or her ... own memory of the evidence. At the end of your deliberations I will collect your notebooks and your pencils and I will see

to it that they are destroyed and you may be assured that no one, including myself, will look at any of your notes.

4. The instructions in *Yeager* were originally prepared for a 1984 training seminar for Superior Court judges. *Id.* at 987 n. 2. On appeal, appellant aims no objection at the instructions given to the jury about the note-taking process. Instead, he argues only that note-taking should be entirely banned or, at best, allowed only in "the most exceptionally difficult, complex and lengthy cases."

5. In *Riley v. United States,* 647 A.2d 1165 (D.C. 1994), we affirmed all convictions of appellant's co-defendants Riley and Davis, and all convictions of co-defendant Allen, except for Allen's conviction for subornation of perjury.

6. In *Yeager, supra,* two criminal defendants sought a writ of mandamus directing a trial judge to vacate an order which, among other things, permitted jurors to take notes at the petitioners' trials. The only issue before this Court, however, was the propriety of another portion of the trial court's order, which permitted jurors to submit written questions to witnesses. 502 A.2d at 981 n. 6. Accordingly, we did not comment on the propriety of the jury note-taking procedure. Nonetheless, we did append to our opinion the trial court's order, which defended the propriety of jury note-taking as well as the jury question procedure and another matter. *Id.* at 986–1006.

*erally Esaw, supra,* 586 A.2d at 1169 (discussing arguments for and against jury note-taking); *Yeager, supra,* 502 A.2d at 989–92 (same); Heuer & Penrod, *Increasing Jurors' Participation in Trials,* 12 L. & HUMAN BEHAVIOR 231, 232–36, 244–51 (1988) (report on field experiment examining advantages and disadvantages of jury note-taking).

In the case before us, the jury served in a nine-day trial involving twelve counts against four defendants, and the trial court instructed the jurors on the use of their notes. We find no abuse of discretion in the trial court's decision here to permit the jurors to take notes and use them in their deliberations.[7]

### III.

■ Appellant challenges his perjury conviction, arguing that the evidence introduced against him was insufficient to satisfy the so-called "two-witness" rule. According to that long-standing rule, "the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment as perjury." *Hsu v. United States,* 392 A.2d 972, 980–81 (D.C.1978) (quoting *Hammer v. Unit-*

ed *States,* 271 U.S. 620, 626, 46 S.Ct. 603, 604, 70 L.Ed. 1118 (1926)) (internal quotation marks omitted). The "two-witness" label is really a misnomer, as the rule can be satisfied with circumstantial evidence alone, or with one direct witness to the falsity of the accused's testimony, plus independent corroborative evidence. *Boney v. United States,* 396 A.2d 984, 986 & n. 2 (D.C.1979). In the latter circumstance, the corroborative evidence "need not be sufficient, by itself, to demonstrate guilt; rather it need only tend to establish an accused's guilt and be 'inconsistent with the innocence of the defendant' when joined with the one direct witness's testimony." *Hsu, supra,* 392 A.2d at 981 (quoting *Arena v. United States,* 226 F.2d 227, 236 (9th Cir.1955)).

■ Appellant was convicted of a single count of perjury for testifying untruthfully to the grand jury. The indictment set forth a portion of the grand jury transcript encompassing two material matters about which appellant had allegedly given false testimony: (1) that appellant was not at the scene of the shooting, and (2) that he did not discuss the incident with Allen, Riley, Davis, or Corley.[8]

7. We note that the trial in the D.C.Circuit's *Goodloe* case itself involved just three counts against one defendant, 88 U.S.App.D.C. at 102, 188 F.2d at 621, and that cogent arguments have been made in favor of jury note-taking in seemingly short and straightforward criminal trials. *See Yeager, supra,* 502 A.2d at 989–990, 992–93 n. 10; *see also* American Bar Association, *Standards for Criminal Justice,* Commentary to Standard 15–3.2, at 15–86 to 15–87 (2d ed. 1980). We are cited to no authority holding that note-taking must be barred simply because of some apparent simplicity of a particular case, but have no occasion to definitively rule on that point here.

8. A single count of the indictment charged that appellant gave the following false, material testimony:

Prosecutor: Do you know where you were at about 4 o'clock to 4:30 [on the day Gibson was shot]?
Appellant: I was in the house.
Prosecutor: Which house were you in?
Appellant: Up Northeast on Abbey Place.
* * *
Prosecutor: Is that where you were staying at the time?
Appellant: Yes.
Prosecutor: Were you anywhere near North Capitol and Bates at about 4:15 when Pernell [Gibson] was shot?

Appellant: No.
Prosecutor: Do you recall seeing or hearing shots at that time?
Appellant: No.
Prosecutor: Any time after that day, did you talk to Everett [Allen] about what had happened?
Appellant: Not really talking about it, you know. We don't talk about nothing, you know, not something like that anyway.
Prosecutor: Did he tell you what had happened?
Appellant: No.
Prosecutor: Did you ever talk to Man [Riley] any time after Pernell got shot about whether he saw what happened?
Appellant: No.
Prosecutor: Did you talk to Scoot [Corley] any time the day of or after about what had happened to Pernell?
Appellant: No.
Prosecutor: And did you talk to Sonny [Davis] any time after the shooting about what happened?
Appellant: No, I haven't.
Prosecutor: So it's your testimony before this Grand Jury that all your information about what happened to Pernell [Gibson] comes from people other than your best friends, Everett [Allen], Scoot [Corley], Man [Riley], and Sonny?

Corley, a direct witness to the falsity of appellant's testimony, testified that all of the co-defendants, including appellant, followed Allen to the crime scene and were present at the fight. Corley also testified that, after the shooting, appellant and the others agreed to lie to the grand jury and deny being at the crime scene.

### A.

With regard to appellant's presence at the crime scene, appellant concedes that Corley's testimony placed him at the scene,[9] but argues that Corley retracted that testimony. We perceive no square retraction.[10] At most, Corley's testimony presented the jury with some internal inconsistency to consider in weighing his credibility. *See Payne v. United States,* 516 A.2d 484, 495 (D.C.1986). Such possible inconsistency does not negate the competence of Corley's testimony under the two-witness rule.

Corley's testimony was corroborated by an eyewitness's pretrial identification of appellant. Before trial, the eyewitness, Nanette Williams, identified appellant from a photographic array as one of the men who ran from the crime scene. Williams testified at trial, but failed to identify appellant when

asked whether any of the men she saw fleeing the scene were in the courtroom.[11] However, Detective James McCoy testified that Williams had identified appellant from the photo array in August 1991, six months after the shooting.

■ Appellant does not contest the admissibility of the detective's testimony under the prior identification exception to the hearsay rule. *See, e.g., Paris v. United States,* 515 A.2d 199, 204–05 (D.C.1986). Rather, appellant argues that such evidence is insufficient to constitute corroboration under *Hsu, supra.*[12] We do not agree. As we have noted, an extrajudicial identification can be highly probative of identity, even more so than an in-court identification. This is because "[t]he extra-judicial identification typically occurs quite soon after the crime when the witness' memory is fresher and less likely to have been led afield by incidental events." *In re L.D.O.,* 400 A.2d 1055, 1057 (D.C.1979).

### B.

With regard to appellant's discussion of the incident with his co-defendants, Corley's testimony that appellant and the others did discuss the incident—at least to the extent of agreeing to lie about it to the grand jury—

Appellant: Yes, yes.

**9.** On direct examination, the prosecutor asked Corley whether he saw anyone in the courtroom who was present at Bates and North Capitol Streets when Gibson was shot. In response, Corley named and identified Allen, Riley, Davis, and appellant. Later, the prosecutor asked Corley where his friends were when the fight began. Corley answered, "All of [us] was right there ... watching the fight." The prosecutor asked whether appellant was included in "all of us." Corley answered yes. On cross-examination of Corley, counsel for one of appellant's codefendants asked whether Corley, Davis, Riley, and appellant "all kind of formed a circle" around the fight. Corley answered yes.

**10.** Corley's purported retraction came during his redirect examination, when the prosecutor asked him to name the four people closest to the fight. Corley answered, "Myself, Linwood [Davis], and—no, no, not Linwood—Man [Riley]. Linwood was behind Man a little bit. I didn't see where Reggie [appellant] was at. And it was probably someone else, but I wasn't really paying attention. I was watching the fight." The prosecutor later asked Corley, "[W]hen you looked up

before you left ... did you see Reggie [appellant] still there?" Corley answered, "I didn't look for Reggie."

**11.** Williams testified that she saw Linwood Davis, Dwayne Corley, and "two other guys." When asked whether any of the two others were in the courtroom, Williams answered that one of them was, and identified Everett Allen. However, she failed to state that she saw the remaining man in the courtroom.

**12.** Appellant cites footnote 9 in *Hsu,* in which we were careful to note that we were not relying on the hearsay portion of the second witness's testimony to corroborate the first witness's testimony. In *Hsu,* however, our concern was that the second witness's corroborative evidence must be independent of the first witness's testimony, and not merely a recounting of the first witness's out-of-court statement. *See* 392 A.2d at 981 & n. 9. No such concern is present here, as the detective's testimony was independent of Corley's testimony. That the detective recounted Williams' out-of-court statement is irrelevant for corroboration purposes, because the detective's testimony was used to corroborate Corley's testimony, not Williams's testimony.

was corroborated by John Robinson, who witnessed a conversation about the fight. The conversation took place in a group of about eleven people, which included Robinson, appellant, and the other co-defendants. Although Robinson did not testify that appellant personally discussed the fight, Robinson's testimony most likely meets the standard for corroboration set out in *Hsu, supra,* which requires only that the corroborative evidence "tend to establish an accused's guilt and be inconsistent with the innocence of the defendant when joined with the one direct witness's testimony." 392 A.2d at 981 (internal quotation omitted). We need not decide that question, however, because proof of falsity with regard to either aspect of appellant's grand jury testimony is sufficient to sustain the perjury conviction, *see Griffin v. United States,* 502 U.S. 46, 56–57, 112 S.Ct. 466, 472–73, 116 L.Ed.2d 371 (1991),[13] and the two-witness rule was clearly satisfied with regard to appellant's presence at the crime scene.

*Affirmed.*

---

**13.** In *Griffin,* the Supreme Court reaffirmed "the prevailing rule: When a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged." 502 U.S. at 56–57, 112 S.Ct. at 473 (internal quotation omitted). Here, a single count of the indictment charged appellant with testifying falsely about two matters, but wilful false testimony as to any one material matter would violate the statute. D.C.Code § 22–2511(a)(1) (1989 Repl.).