## STATE OF CONNECTICUT *v.* PHILIP COLLINS (11250)

LANDAU, SCHALLER and SPEAR, Js.

Argued March 21—decision released June 20, 1995

*Mark D. Phillips,* special public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, was *Eugene Callahan,* state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2)[1] and carrying a pistol without a permit in violation of General Statutes § 29-35.[2] He claims that the trial court improperly (1) failed to be present in the courtroom during the voir dire process, (2) overruled his challenge for cause and refused to permit his exercise of a peremptory challenge with respect to a particular juror, (3) instructed the jury on the issue of identification, (4) failed to conduct a hearing on the issue of juror note-taking during the course of the trial so as to determine whether the defendant was entitled to a mistrial and (5) denied the defendant's motion to suppress identification evidence.

The jury could have reasonably found the following facts. On the evening of May 25, 1991, Eric Goethe was in the vicinity of Perry Street in Stamford when he became involved in an argument with Mike Litt, an acquaintance. After the police arrived and ordered them to leave, Litt left but returned later with several friends. Eric Goethe telephoned his brother, Dwayne Goethe, who drove to Perry Street, picked him up and

---

[1] General Statutes § 53a-60 (a) provides in pertinent part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

drove to the south end of Stamford where they met friends. Followed by friends in separate cars, they returned to the area of Perry Street, where Eric Goethe confronted Litt. As the two faced each other, an individual later identified as the defendant came up behind Eric Goethe. After an exchange of words between the two, the defendant pulled out a handgun and fired two shots, hitting Eric Goethe's feet.

I

Invoking this court's decision in *State* v. *Patterson*, 31 Conn. App. 278, 624 A.2d 1146 (1993), rev'd, 230 Conn. 385, 645 A.2d 535 (1994), the defendant asserts that the absence of the trial judge from the voir dire proceedings constitutes per se reversible error. He requests review of this unpreserved claim pursuant to *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

The following facts are relevant to our disposition of this claim. After the trial judge introduced counsel to the panel of venirepersons and gave a preliminary charge, he excused himself to deal with other court business. Neither the defendant nor the state objected. During the defendant's examination of prospective jurors, the state objected to certain questions and requested that the judge be summoned. In response, the defendant withdrew or rephrased each question such that the parties did not summon the judge.

The defendant's first claim is controlled by our recent decision in *State* v. *Lopez*, 37 Conn. App. 509, 657 A.2d 647 (1995). In that case, we recognized that in *State* v. *Patterson*, 230 Conn. 385, 390, 645 A.2d 535 (1994), our Supreme Court held that "even assuming that the trial judge must be present in the courtroom throughout the voir dire of a criminal trial, the defendant can waive such a requirement."

"As to what constitutes a valid waiver in cases where the judge is not present during the voir dire process in a criminal trial, the court stated that '[t]he waiver can be made by counsel, and it will ordinarily be inferred from the absence of an objection.' [*State* v. *Patterson*, supra, 230 Conn. 396.] In *Patterson*, the court found that the presence of certain facts indicated a valid waiver. The defendant was represented by counsel and had prior experience with the criminal justice system. The defendant had acquiesced each time the judge left the courtroom and had requested the court's presence only when a judicial determination needed to be made. Further, the defendant did not object to the judge's absence during the voir dire. Id." *State* v. *Lopez*, supra, 37 Conn. App. 512–13.

As in *Lopez*, "[t]he issue thus becomes whether the defendant waived the right to have the judge present during the voir dire proceedings. The record indicates a valid waiver in this case. The defendant was represented by counsel and did not object to the judge's absence. The only time the judge's presence was requested by the defendant was when a judicial determination needed to be made. Accordingly, we conclude that the trial court acted properly."[3] Id., 513.

## II

The defendant next claims that the trial court improperly refused to excuse for cause a juror who, after being

---

[3] "As we stated in *State* v. *Cox*, 36 Conn. App. 463, 466, 652 A.2d 520 (1994), this decision is not to be read too broadly as its precedent applies only to criminal cases in which the judge was absent from voir dire, pursuant to a valid waiver, prior to July 26, 1994. 'Despite its ruling on this court's *Patterson* decision, the Supreme Court, acting under its supervisory power, declared "that henceforth the trial judge must continuously be present to oversee voir dire in a criminal case. Because this requirement is imposed by [the Supreme Court] pursuant to its supervisory power, the requirement cannot be waived by either party in future criminal cases." *State* v. *Patterson*, supra, 230 Conn. 400.' *State* v. *Cox*, supra, 466." *State* v. *Lopez*, supra, 37 Conn. App. 513 n.4.

accepted by both parties, observed handcuffs, shackles and prison clothes in a room from which he had previously seen the defendant exit. He also claims that the trial court improperly refused to permit him to exercise a peremptory challenge as to that juror.

Jack Hansen was the first venireperson questioned and accepted by both parties. During the voir dire, he responded that he had attended graduate school at Columbia University and was at the time of the trial an adjunct professor of educational psychology at that school. He stated that he had an open mind and would have to consider all the evidence before accepting the testimony of law enforcement officials. Hansen also asserted his strong belief in the presumption of innocence and stated that, if the evidence did not show guilt beyond a reasonable doubt, he would vote for acquittal even though he thought the defendant was probably guilty.

Several days later, and before Hansen was sworn as a juror, the defendant learned that Hansen had observed the handcuffs and other indicia of custody. On the basis of this information, the defendant challenged Hansen for cause. The court overruled the challenge and instead indicated that, upon completion of the jury selection, including the selection of an additional alternate, the court would supervise a supplemental voir dire of Hansen.

At the supplemental voir dire, Hansen stated that he did observe the items, but could not "imagine how that has any bearing on whether or not [the defendant] is innocent or guilty." He explained that he would have no difficulty divorcing the incident from his mind intellectually, but acknowledged that, according to his training as a psychologist, it is more difficult to divorce one's emotions from one's decisions. For this reason, he stated, "I will make the extra effort to do so . . .

I want to be fair to [the defendant] and I also want to be fair to society so I want to make those judgments and decisions based on what evidence we hear and not on emotional reaction."[4] The court subsequently overruled the defendant's renewed challenge for cause and denied his request to exercise a peremptory challenge.

"The trial court has discretion to determine the competency of a juror to serve. General Statutes § 54-82f. On appeal, therefore, we may reverse the trial court's denial of a request to excuse a juror for cause only upon a showing of abuse of discretion resulting in prejudice to one of the parties." *State* v. *Crafts*, 226 Conn. 237, 259, 627 A.2d 877 (1993). Our review of the record indicates that the trial court acted well within its discretion in considering and overruling the defendant's challenge for cause. By the conclusion of the supplemental voir dire, the court had sufficient reason to believe that Hansen would be a fair-minded juror with no preconceived opinion as to the defendant's culpability.

The defendant also argues that the court improperly refused to permit his exercise of a peremptory challenge with respect to Hansen. Once a juror has been accepted by both parties, the absolute right to exer-

---

[4] The defendant also presses a claim of judicial misconduct. At the supplemental voir dire, the trial court asked Hansen, "What if I were to tell you that [the items in the room] aren't [the defendant's]?" Hansen answered that he would accept the court's statement as truth. After Hansen had left the courtroom, the court added, "I have said, and I say again for the record, that the clothing and the vestitures, the handcuffs Mr. Hansen described that he saw in the deliberating room did not belong to this accused." The defendant claims that "this obvious falsehood further tainted the proceeding, as well as this juror and constituted judicial misconduct." Considering this claim in light of the standard set out in *State* v. *Smith*, 200 Conn. 544, 549, 512 A.2d 884 (1986), we must conclude that the trial court's statements did not constitute judicial misconduct. The court did not "assume a position of advocacy, real or apparent . . . and [did not display] . . . hostility or skepticism toward the defendant's case, or . . . approbation for the prosecution's. . . ." (Citations omitted.) Id.

cise a peremptory challenge is lost. *Walczak* v. *Daniel*, 148 Conn. 592, 596–97, 172 A.2d 915 (1961); *DeCarlo* v. *Frame*, 134 Conn. 530, 535, 58 A.2d 846 (1948); *State* v. *Potter*, 18 Conn. 166, 176 (1846). The trial court may, however, "in its discretion permit such a challenge to be made at any time before the jury is sworn." *Walczak* v. *Daniel*, supra, 597, quoting *DeCarlo* v. *Frame*, supra, 535. See also *State* v. *Potter*, supra, 176, in which our Supreme Court stated that "[o]ur practice gives one advantage to the prisoner, that if anything new has occurred since the juror was directed to take his seat as juror, the party will not be absolutely precluded from taking the benefit of it, as he is in England after he is sworn, unless by consent. *Tyndal's Case*, Cro. Car. 291–2."

In this case, the trial court appropriately exercised its discretion. At the conclusion of the supplemental voir dire, the court stated that "Mr. Hansen is probably one of the most outstanding jurors that I have ever come in contact with. I think that he understands the process. I think that he would be abundantly fair. . . . I'm completely satisfied that he will make an outstanding juror for the state and for the defense and I see no reason for me exercising my discretion to disqualify him or excuse him . . . ." Our review of the record in this case convinces us that the trial court did not abuse its discretion in determining that the defendant would suffer no prejudice as a result of the incident in question and, consequently, in refusing to permit the defendant to exercise a belated peremptory challenge.

### III

The defendant next claims that the trial court improperly instructed the jury on the issue of identification. Specifically, he argues that the court failed to include in its instructions his requested *Telfaire* charge.[5]

---

[5] A *Telfaire* charge instructs the jury to consider, in evaluating eyewitness identifications, the adequacy of the witness' opportunity and capa-

The defendant filed a request to charge on the issue of identification, which did not invoke *Telfaire*, but which did request the court to instruct the jury to consider (1) an identification witness' opportunity to observe the offender, including the length of time available and the lighting conditions, (2) whether the witness had seen the offender in the past, (3) the extent to which the identification was the product of his own recollection, as may be determined from the strength of the identification, the length of time that had elapsed since the crime and other circumstances surrounding the identification, (4) the credibility of the identification witness, and (5) the fact that the state must prove identification beyond a reasonable doubt.

" 'It is not error for a trial court to refuse to charge a jury in the exact words of a requested instruction, as long as the requested charge is given in substance. . . .' " (Citations omitted.) *State* v. *Fenn*, 16 Conn. App. 318, 328, 547 A.2d 576, cert. denied, 209 Conn. 822, 551 A.2d 757 (1988), cert. denied, 488 U.S. 1031, 109 S. Ct. 841, 102 L. Ed. 2d 973 (1989), quoting *State* v. *Jenkins*, 8 Conn. App. 35, 40, 510 A.2d 1370 (1986).

Here, although the trial court's charge to the jury did not mirror the defendant's request to charge, it did cover the substantive points requested by him.[6] Fur-

ity to observe the offender, the length of time available for the witness to observe the offender, the proximity of the witness to the offender, whether the witness had seen or known this person in the past, whether the identification was the product of the witness' own recollection, and the credibility of the witness. *United States* v. *Telfaire*, 469 F.2d 552, 558–59 (D.C. Cir. 1972); see *State* v. *Hardison*, 16 Conn. App. 142, 146 n.4, 546 A.2d 968 (1988).

[6] The court charged the jury in pertinent part: "Now the state must prove beyond a reasonable doubt that not only was the offense committed as alleged in the information but that the defendant was the person who committed it. You must be satisfied . . . beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him.

ther, an examination of the charge as a whole reveals that the court's instructions were clear, accurate, complete, comprehensive, and furnished sufficient guidance to the jury. See *State* v. *Hardison*, 16 Conn. App. 142, 146, 546 A.2d 968 (1988). Because we find that the "salient principles of the court's charge adequately covered the dangers of misidentification"; (citations omitted; internal quotation marks omitted) *State* v. *Graham*, 21 Conn. App. 688, 714, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990); we conclude that the defendant's claim is without merit.

## IV

The defendant next faults the trial court for failing to hold a hearing or to declare a mistrial, both sua sponte, on the basis of juror note-taking. He asserts that the note-taking constituted juror misconduct, which deprived him of his constitutional right to a fair trial by an impartial jury.

During the first day of jury deliberations, it came to the court's attention that several of the jurors had taken notes during the course of the trial. The court instructed the jury that the taking of notes and their use in deliberations was prohibited. A sheriff then collected the notes, which were made available to counsel and marked as exhibits. After the jury retired, the defendant objected to the court's failure to instruct the

On the issue of identification, you should take into account the following: You should consider whether or not the victim and his brother had the opportunity to observe the features which they described in court; the conditions under which they made those observations; the time they had to view the perpetrator of the crime and the distance between them and the perpetrator of the crime and whether the witness knew the person before the incident in question. You should also take into account the circumstances under which they first viewed and identified the defendant, the suggestibility of the procedure used in that viewing and all other facts which you find relating to the reliability or lack of reliability of the identification of the defendant." Earlier in the charge, the court addressed the issue of credibility of witnesses.

jury earlier in the trial not to take notes. The defendant, however, made no motion for a mistrial and did not request a hearing on the issue.[7]

While our Supreme Court has held that a trial court has discretion to permit note-taking by jurors; see *Esaw* v. *Friedman*, 217 Conn. 553, 559, 586 A.2d 1161 (1991);[8] our appellate courts have not squarely addressed the question of whether note-taking by jurors during trial, without permission and with no direction by the trial court, constitutes juror misconduct. Cf. *Klingeman* v. *McCay*, 25 Conn. App. 217, 594 A.2d 18, cert. denied, 220 Conn. 910, 597 A.2d 333 (1991) (juror wrote thoughts about case and read to other jurors).

No doubt may be assigned to the rule that " '[t]he jury room cannot be guarded with too much vigilance and jealousy. Courts must reject all evidence not received on the trial, and must repel every foreign influence, which may affect the minds of the jury.' " *Esaw* v. *Friedman*, supra, 217 Conn. 559, quoting *Clark* v. *Whitaker*, 18 Conn. 543, 549 (1847). Neither *Clark* nor its progeny, *Gimelli* v. *Waterbury Cadillac Co.*, 109 Conn. 722, 727, 145 A. 563 (1929), however, "can properly be read as bearing on the issue of note-taking by jurors; it can hardly be said that a juror's own notes, reflecting the thoughts or questions that may have

---

[7] Although in other circumstances such nonaction by the defendant might preclude appellate review, in this case we exercise our discretion to consider the defendant's claim, as it is in the interests of justice and public welfare to do so. See *Kavanewsky* v. *Zoning Board of Appeals*, 160 Conn. 397, 401, 279 A.2d 567 (1971).

[8] The *Esaw* court indicated that when a trial court decides to permit a jury to take notes, it "should instruct the jurors that their notes are merely aids to their memories and should not be given precedence over their independent recollection of the evidence, that a juror who has not taken notes should rely on his recollection of the evidence and should not be influenced by the fact that other jurors have done so, and that they should not allow their note-taking to distract then from paying proper attention to the evidence presented to them." *Esaw* v. *Friedman*, supra, 217 Conn. 563.

arisen in his mind during the trial or reflecting his attempts to preserve in writing his recollections of the evidence, constitute a 'foreign influence, which may affect the minds of the jury.' *Clark* v. *Whitaker*, supra [549]." *Esaw* v. *Friedman*, supra, 559. In the case at hand, most of the juror's notes merely recount the testimony elicited at trial. The one exception is a notation that reflects the writer's thoughts about certain evidence in a manner suggesting reasoning favorable to the defendant. Unlike in *Esaw*, however, the trial court did not exercise its discretion and permit the jurors to take notes, nor did it caution the jurors as to how to take and utilize such notes.

Where juror misconduct is at issue, " '[t]he rule extracted from the cases seems to be, that however improper such conduct may have been, yet if it does not appear that it was occasioned by the prevailing party, or anyone in his behalf; if it [does] not indicate any improper bias upon the juror's mind, and the court cannot see, that it either had, or might have had, an effect unfavorable to the party moving for a new trial; the verdict ought not to be set aside.' *Pettibone* v. *Phelps*, 13 Conn. 445, 450 (1840); *State* v. *Watkins*, 9 Conn. 46, 51 (1831)." *State* v. *Asherman*, 193 Conn. 695, 735–36, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).[9]

"Juror misconduct which results in substantial prejudice to the defendant is not to be tolerated. But not every irregularity in a juror's conduct compels reversal. 'The dereliction must be such as to deprive the defendant of the continued, objective and disinterested judgment of the juror, thereby foreclosing the accused's right to a fair trial.' *Nelson* v. *United States*, 378 A.2d 657, 660 (D.C. 1977); *United States* v. *Fay*, 238 F.Sup.

[9] There is no claim in this case that the alleged juror misconduct was occasioned by either party.

1005, 1007 (S.D.N.Y. 1965). Consideration of extrinsic evidence is presumptively prejudicial because it implicates the defendant's constitutional right to a fair trial before an impartial jury. *State* v. *McCall*, 187 Conn. 73, 80, 444 A.2d 896 (1982)." *State* v. *Asherman*, supra, 193 Conn. 736. " 'Accordingly, when a juror passes beyond the record evidence in reaching a decision, whether a new trial will be granted depends upon the magnitude of the juror's deviation from his proper role, the degree to which the accused was deprived of the benefits of the constitutional and statutory safeguards, and the likelihood that the impropriety influenced the jury's verdict. All of these elements must be weighed in determining whether there is a reasonable possibility that the defendant's right to a fair trial has been prejudiced.' *State* v. *Graham*, 422 So. 2d 123, 132 (La. 1982)." Id., 739–40.

Assuming, without deciding, that the jurors' notes constitute extrinsic evidence and that the claim is one of constitutional magnitude, we are convinced that the state has shown that the defendant was not prejudiced pursuant to the three part balancing test set out by the *Asherman* court. To begin with, the note-taking by the jurors, while improper because not permitted by the trial court, was a slight and insignificant deviation from their proper role. In *Esaw* v. *Friedman*, supra, 217 Conn. 563, for example, the court held that "the benefits [of juror note-taking] are substantial enough to allow trial judges to decide, in each case, whether note-taking should be permitted."[10]

---

[10] "Indeed, the American Bar Association Standards for Criminal Justice provide that jurors should have the right to do so even without the permission of the trial judge. 'Jurors may take notes regarding the evidence presented to them and keep these notes with them when they retire for their deliberations. Such notes should be treated as confidential between the juror making them and the other jurors.' III A.B.A. Standards for Criminal Justice (2d Ed. 1980) § 15-3.2. The commentary to this section states that '[t]he thrust of this standard is to permit note taking by jurors as a matter

The degree to which the defendant was deprived of the benefits of constitutional and statutory safeguards was clearly minimal. Because the impact on the defendant's constitutional rights could be adequately evaluated by simply reviewing the contents of the notes, we conclude on review that the trial court could reasonably have decided that further inquiry, in the form of a hearing, would serve no purpose. Also, the fact that the defendant made no request for a hearing to determine the nature and extent of the alleged jury misconduct seriously undermines his claim that his constitutional and statutory rights were impacted.

Finally, we examine the likelihood that the impropriety influenced the jury's verdict. In light of the fact that the trial court took effective curative action by taking the notes away from the jury early in the deliberations and giving an appropriate instruction on the reason for the prohibition,[11] we cannot conclude that the note-taking influenced the jury's verdict.

"Not every incident of juror misconduct requires a new trial. See, e.g., *United States* v. *Klee*, 494 F.2d 394, 396 (9th Cir.), cert. denied, 419 U.S. 835, 95 S. Ct. 62, 42 L. Ed. 2d 61 (1974), and cases there cited; *State* v. *Asherman*, [supra, 193 Conn. 736]. The test for a new trial is ' "whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." ' *State* v. *McCall*, [187 Conn. 73, 77, 444 A.2d 896 (1982)], quoting *United States* v. *Klee*, supra

of right without permission of the court.' III A.B.A. Standards for Criminal Justice, supra, § 15-3.2; id., commentary, p. 15.84. By contrast, rule 513 (e) of the Uniform Rules of Criminal Procedure leaves the matter to the trial court's discretion. See III A.B.A. Standards for Criminal Justice, supra." *Esaw* v. *Friedman*, supra, 217 Conn. 560–62.

[11] The court instructed the jury as follows: "The taking of notes, and their use in deliberations is prohibited. The reason it's prohibited is—written notes tend to take on a greater significance, in the jury room than they may deserve. . . . [T]here are good note takers, and there are bad note takers. They also tend to cause a mind set, in the person of the taker of the notes."

[396]; see also *United States* v. *Hendrix*, 549 F.2d 1225 (9th Cir.), cert. denied, 434 U.S. 818, 98 S. Ct. 58, 54 L. Ed. 2d 74, reh. denied, 434 U.S. 960, 98 S. Ct. 493, 54 L. Ed. 2d 321 (1977)." *State* v. *Cubano*, 203 Conn. 81, 91, 523 A.2d 495 (1987). "When a wise and experienced judge, who presided at the trial and observed the jury, comes to such a conclusion, it is not for us to upset it. The trial judge 'was in a better position than we are to determine whether what happened was prejudicial. . . .' " (Citations omitted.) *United States* v. *Klee*, supra, 396.

Applying the balancing test set forth above in *Asherman*, we conclude that the jurors' note-taking did not so jeopardize the fairness of the defendant's trial as to require the trial court to declare a mistrial sua sponte or to hold a hearing to determine if the note-taking should have resulted in a mistrial. We should continue to be circumspect in overturning on appeal the action of a trial court in failing to grant sua sponte a mistrial.

V

The defendant's final claim is that the trial court violated his right to due process of law by denying his motion to suppress identification evidence. He argues that the photographic arrays from which the victim and his brother initially identified him were impermissibly suggestive. He also asserts that these identifications were unreliable.

The following facts are pertinent to this claim. Prior to the beginning of the trial, the defendant moved to suppress evidence of photographic identifications made by the victim, Eric Goethe, and his brother, Dwayne Goethe. At the hearing on the motion, Eric Goethe testified that at the time of the shooting he was able to see his assailant adequately because the area was lit by streetlamps and lights on nearby buildings. More-

over, the assailant stood only a few feet away from both Eric and Dwayne Goethe.

Three days after the shooting, a Stamford police officer presented Eric Goethe with an array of eight photographs that had been assembled on the basis of Eric Goethe's description of his assailant. Each photograph was of a black male and was taken from the same distance. Eric Goethe looked at the photographs one by one and, when he came to the picture of the defendant, stated that it was the person who had shot him.

Dwayne Goethe testified at the suppression hearing that he recognized his brother's assailant as someone he had known before the shooting. Three days after the incident, Dwayne Goethe was presented with a photographic array that included the same seven pictures of other individuals and a different copy of the defendant's photograph. After looking through the array twice, Dwayne Goethe identified the defendant without hesitation. The trial court denied the defendant's motion to suppress, finding that the arrays were not impermissibly suggestive and that the identifications were reliable.

" 'To determine whether a pretrial identification procedure, such as the photographic array in this case, violated a defendant's due process rights, "the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the 'totality of the circumstances.' " *State* v. *Theriault*, 182 Conn. 366, 371–72, 438 A.2d 432 (1980).' *State* v. *Howard*, 221 Conn. 447, 453, 604 A.2d 1294 (1992); see also *State* v. *Tatum*, 219 Conn. 721, 727, 595 A.2d 322 (1991); *State* v. *Outlaw*, 216 Conn. 492, 501, 582 A.2d 751 (1990). An identifi-

cation procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification. *State* v. *Outlaw,* supra, 501; *State* v. *Milner,* 206 Conn. 512, 534–35, 539 A.2d 80 (1988); *State* v. *Boscarino,* 204 Conn. 714, 725, 529 A.2d 1260 (1987). The defendant bears the burden of proving both that the identification procedures were unnecessarily suggestive and that the resulting identification was unreliable. *State* v. *Payne,* 219 Conn. 93, 106, 591 A.2d 1246 (1991); *State* v. *Milner,* supra, 535; *State* v. *Boscarino,* supra, 725; *State* v. *Williams,* 203 Conn. 159, 173–74, 523 A.2d 1284 (1987); *State* v. *Aversa,* 197 Conn. 685, 693, 501 A.2d 370 (1985).'' *State* v. *White,* 229 Conn. 125, 161–62, 640 A.2d 572 (1994).

In this case, the defendant claims that the arrays were unnecessarily suggestive due to the fact that in his photograph, his likeness was smaller than those in the photographs of the other seven individuals. Also, he asserts that only six of the men depicted had facial hair and that he was one of the two clean-shaven subjects. '' 'Any array composed of different individuals must necessarily contain certain differences.' *State* v. *Vaughn,* 199 Conn. 557, 564, 508 A.2d 430 (1986). . . . Differences in the size and color composition of photographs 'in and of themselves do not render an array . . . unnecessarily suggestive.' *State* v. *McKnight,* 191 Conn. 564, 571, 469 A.2d 397 (1983); *State* v. *Davis,* 175 Conn. 250, 254, 397 A.2d 1347 (1978).'' (Citations omitted.) *State* v. *Boscarino,* supra, 204 Conn. 726–27.

In both arrays, the defendant's photograph was shown with those of other black males who appeared to be approximately his age and whose physical traits were not so radically different from the defendant's as to make his photograph distinctive. We conclude, therefore, that the defendant failed to carry his burden of proving that the identification procedure gave rise to a very substantial likelihood of irreparable mis-

identification. Because we conclude that the arrays used to identify the defendant were not unnecessarily suggestive, we need not consider whether the identifications were nevertheless reliable. *State* v. *White*, supra, 229 Conn. 164; *State* v. *Boscarino*, supra, 204 Conn. 726.

The judgment is affirmed.

In this opinion the other judges concurred.