### STATE OF CONNECTICUT *v.* EDWARD WRIGHT
### (AC 19636)

Landau, Mihalakos and Daly, Js.

Argued January 25—officially released April 17, 2001

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian Preleski*, assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Edward Wright, appeals from the judgment of conviction, following a jury trial,

of attempt to commit murder in violation of General
Statutes §§ 53a-49[1] and 53a-54a,[2] and assault in the first

[1] General Statutes § 53a-49 provides: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

degree in violation of General Statutes § 53a-59 (a) (1).[3] The jury also determined that the defendant had been on pretrial release at the time he committed the crimes of which he was convicted, which subjected him to the provisions of General Statutes § 53a-40b. On appeal, the defendant claims that the court improperly (1) denied his motion for a judgment of acquittal at the end of the state's case-in-chief, (2) failed to instruct the jury on the issue of self-defense in accord with his request to charge and (3) admitted certain rebuttal testimony into evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. For approximately one year prior to the incident that gave rise to his conviction, the defendant had been romantically involved with Jane Cadorette. About one week before the incident, Cadorette terminated the relationship. Although the defendant and Cadorette had jointly leased an apartment at 6 Park Street (apartment) in Bristol, the defendant had not resided in the apartment for one week prior to the incident. Most of the defendant's personal possessions had been removed from the apartment, and Cadorette had taken all of his clothing to the home of his new girlfriend, Jennifer Long.

Cadorette spent the evening of September 6, 1997, with Verrand Little, the victim, a man with whom she had had a romantic relationship for approximately eight years prior to her relationship with the defendant. The victim spent the night with Cadorette in the apartment. At about 8 a.m. on the morning of September 7, 1997, while Cadorette and the victim were still asleep in the bedroom, the defendant entered the kitchen of the

---

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

apartment by dislodging a chair that had been wedged under the doorknob. Cadorette awoke and called the police.

The defendant entered the bedroom by breaking down the door, which was locked and also secured with a chair. Upon entering the bedroom, the defendant shouted to Cadorette, "You got what you wanted, bitch." The defendant began to fight with the victim. During the altercation, the victim's head hit and broke through a wall, and the doors to a closet were knocked down. The defendant went to the kitchen, where he got a knife and the glass container of a blender. The defendant returned to the bedroom and hurled the glass container at the victim, but did not strike him. The defendant then stabbed the victim several times.

As the defendant was leaving the apartment, two police officers arrived and ordered him to return to the apartment, where they handcuffed him and placed him on the kitchen floor. The defendant became belligerent, kicking, fighting and screaming invectives and threats at the victim and Cadorette. The defendant said things such as, "I'll get you," "I'll kill you," "I should've killed you" and "I'm going to kill you when I get out."

Emergency medical personnel who attended the victim found that he had sustained wounds to his hands, shoulder and back. When he stabbed the victim in the back, the defendant also punctured the victim's lung, causing it to collapse. The victim sustained a total of five stab wounds, lost a significant amount of blood and had difficulty breathing. He was removed from the scene by Life Star helicopter.

Following his arrest, the defendant was charged with attempt to commit murder, assault in the first degree

and burglary in the first degree.[4] After he was convicted, the defendant appealed.

## I

The defendant's first claim is that the court improperly denied his motion for a judgment of acquittal at the end of the state's case-in-chief because there was insufficient evidence to convict him. The defendant argues specifically that the state failed to prove that he intended to commit the crimes of attempt to commit murder and assault in the first degree because there was evidence that he had acted in self-defense. We disagree.

The following procedural facts are relevant to our disposition of the defendant's claim. At the end of the state's case-in-chief, the defendant moved for a judgment of acquittal on all three counts against him. The court granted the defendant's motion with respect to the charge of burglary in the first degree, but denied it as to the charges of attempt to commit murder and assault in the first degree. The defendant then presented his case and took the witness stand to testify on his own behalf. In light of that procedural background, the defendant's claim as stated is not reviewable. See *State v. Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1984).

"Because the defendant's testimony came after the denial of his motion for judgment of acquittal, the waiver rule precludes him from raising this claim on appeal. 'Under the waiver rule, when a motion for acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without foregoing the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of

---

[4] The court granted the defendant's motion for a judgment of acquittal on the charge of burglary in the first degree in violation of General Statutes § 53a-101.

the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto.' *State* v. *Rutan*, [supra, 194 Conn. 440] . . . ." *State* v. *Kari*, 26 Conn. App. 286, 291, 600 A.2d 1374 (1991), appeal dismissed, 222 Conn. 539, 608 A.2d 92 (1992).[5] We therefore must look at all of the evidence that was before the jury, not just the state's case-in-chief.

"The standards by which we review claims of insufficient evidence are well established. When reviewing a sufficiency of the evidence claim, our courts apply a two-prong[ed] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Perry*, 48 Conn. App. 193, 196, 709 A.2d 564, cert. denied, 244 Conn. 931, 711 A.2d 729 (1998).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence

---

[5] We are mindful that the application of the waiver rule in criminal cases has been criticized; see, e.g., *State* v. *Roy*, 34 Conn. App. 751, 766 n.13, 643 A.2d 289 (1994), rev'd on other grounds, 233 Conn. 211, 658 A.2d 566 (1995); and that the issue presently is pending before our Supreme Court. See *State* v. *Spillane*, 54 Conn. App. 201, 737 A.2d 479, cert. granted, 251 Conn. 914, 740 A.2d 866 (1999) (defendant raised issue as alternate ground).

so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . In doing so, we keep in mind that [w]e have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . . *State* v. *Radzvilowicz*, 47 Conn. App. 1, 17–18, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Sanchez*, 50 Conn. App. 145, 149–50, 718 A.2d 52, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998).

The defendant testified in the following manner to support his claim of self-defense. According to the defendant, when he first entered the bedroom, the victim picked up a baseball bat and swung it at the defendant, striking him in the nose and breaking it.[6] The defendant claimed that he then went into the kitchen and heard Cadorette tell the victim not to hit him with the baseball bat again. Because he feared for his life, the defendant grabbed the knife to defend himself. The defendant and the victim continued their struggle. At some point, the defendant claimed, the victim dropped the baseball bat and lunged at the defendant with a chair. The defendant used the knife to defend himself and cut the victim. During their struggle, the victim and

---

[6] A physician testified at trial that the defendant had suffered a broken nose.

the defendant fell to the floor, where the victim rolled onto the knife, which caused the injury to his back.

Although he told the police on the morning of the incident that he lived at 31 Landry Street in Bristol with his friend Warren Brown, on direct examination in his own case, the defendant denied that he lived at the Landry Street address. He also testified that he spent the night of September 6, 1997, at Brown's home.

The jury also heard Cadorette testify that the defendant had removed most of his personal possessions from the apartment and that she had taken his clothes to the home of Long, his new girlfriend. On cross-examination, the defendant denied that he was romantically involved with Long or that he spent the night before the incident with her. He also testified that his clothing was still at the apartment at the time of the incident. During its cross-examination of the defendant, the state introduced evidence of his prior felony convictions.

The state called Long to testify as a rebuttal witness. Long testified that the defendant was her former boyfriend and that the two of them had spent the night of September 6, 1997, together at her home. The defendant had been staying with Long for the few days prior to September 7, 1997, and Cadorette had brought his clothing to Long's home.

The defendant argues on appeal that the state failed to prove that he had the requisite intent to commit the crimes of attempt to commit murder or assault in the first degree. The defendant's entire argument is based on his claim of self-defense. The question for the jury was which version of the incident to believe. We conclude that, on the basis of the evidence before it and the reasonable inferences to be drawn from the evidence, the jury reasonably could have found that the defendant intended to murder the victim and that he intended to cause the victim serious physical injury by

use of a dangerous instrument, the knife. See *State* v. *Crespo*, 246 Conn. 665, 674–75 n.7, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). The jury reasonably could have found, as well, that the state proved beyond a reasonable doubt that the defendant did not act in self-defense.

The defendant's version of the incident, as well as the testimony of the victim, indicated that there was a time when the defendant exited the bedroom and went into the kitchen, where he obtained a glass blender container, which he threw at the victim, and a knife. Furthermore, the jury was entitled to consider the defendant's statements about killing the victim and Cadorette that were made while he was handcuffed after the incident. See *State* v. *Ash*, 33 Conn. App. 782, 793, 638 A.2d 633, rev'd on other grounds, 231 Conn. 484, 651 A.2d 247 (1994). The jury was free to believe the victim's version that the defendant was the aggressor or the defendant's testimony that he acted in self-defense. Clearly, the jury believed the victim's version.

On appeal, we do not sit as triers of fact or judge the credibility of the witnesses. The evidence demonstrates that the defendant's credibility was seriously impeached by Long's testimony. The jury was also free to consider evidence of the defendant's prior felony convictions when determining his credibility. General Statutes § 52-145 (b); *State* v. *Braswell*, 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985). For those reasons, the court did not improperly deny the defendant's motion for a judgment of acquittal as to the charges of attempt to commit murder and assault in the first degree.

## II

The defendant's second claim is that the court improperly instructed the jury by failing to use the

defendant's request to charge with respect to self-defense and instructed the jury in accord with the state's request to charge. Specifically, the defendant claims that although the court instructed the jury on the issue of self-defense, the instruction was one-sided and not properly adapted to the issues, failed to encompass the duty to retreat and the exceptions thereto, and did not provide the jury with sufficient guidance. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. During trial, the defendant acknowledged that he stabbed the victim, but claimed that he did so in self-defense. Following its instructions to the jury,[7] the court inquired whether

---

[7] The court instructed the jury with respect to self-defense as follows:

"Self-defense is a means by which the law justifies the use of force which would otherwise be illegal. Once self-defense is raised in a case, the state must disprove the defense beyond a reasonable doubt.

"A person is justified in the use of reasonable force, reasonable physical force upon another person, when he reasonably believes that such force is necessary to protect himself from the imminent use of force by another person. Self-defense is a legal defense to the use of force that would otherwise be illegal or criminal.

"On the issue of self-defense, the law of our state provides that a person is justified in using reasonable physical force upon another person to defend himself from what he, the user, from what he reasonably believes to be the use or the imminent use of physical force. And he may use, the user, may use such degree of force which he reasonably believes to be necessary for that purpose.

"The statute focuses on the person claiming self-defense. It focuses on what he reasonably believed under the circumstances and presents a question of fact for you people.

"The test for the degree of force in self-defense is a subjective-objective one, meaning that it has some subjective aspects and some objective aspects. Self-defense requires the jury to measure the justifiability of the defendant's actions from a subjective perspective. That is, what the defendant reasonably believed under the circumstances of this case and on the basis of what the defendant perceived the circumstances to be.

"The law requires, however, that the defendant's belief be a reasonable one and not irrational or unreasonable under the circumstances. That is, would a reasonable person in the defendant's circumstances have reached the belief that he reached? So, it's both a question of what his belief was and then whether that belief was a reasonable one.

"It's the burden of the state to disprove the defendant's claim of self-

counsel had any exceptions to the charge. Only defense counsel took an exception. Defense counsel stated:

"First of all, it was my request that the court read to the jury verbatim, my request to charge. And also, I take exception to the court's charge, instruction to the jury, with regard to the count of attempt to commit murder, where the court indicated that the jury could consider statements allegedly made by [the defendant], in the kitchen, directed to Ms. Cadorette and [the victim]

defense beyond a reasonable doubt. Now, the state may do this, that is, disprove the claim, by proving any one of the following elements beyond a reasonable doubt, and I'll give you those elements now.

"First, that the defendant did not believe that he was in imminent danger of injury and that the use of force was not necessary to protect himself. You consider the circumstance of what went on in that bedroom and determine whether he believed he was in imminent danger, and, if not, if he didn't believe that he was in imminent danger, then that, the use of force, was not necessary to protect himself. That would be a means by the state to disprove the validity of the self-defense claim.

"Secondly, that the defendant did not have reasonable grounds to believe that he was in imminent danger of injury. If the state proves that, the defense may be rendered invalid—that the force used by the defendant was unreasonable. Again, examining all of the circumstances.

"Fourth, that the defendant himself was the initial aggressor and that he did not attempt to withdraw and effectively communicate to the other person his intent to withdraw. It's generally held that the initial aggressor is the one who first does acts of such a nature as would ordinarily lead to deadly combat or as would put the other person involved in fear of death or serious bodily injury, the other person being [the victim].

"With respect to this element, it's important to consider that—it is important to consider that the law of self-defense does not imply the right of attack. By definition, self-defense means the use of defensive force. Therefore, a person claiming this right, that is, [the defendant] himself, must act honestly and conscientiously, and not from anger, malice or revenge. He must not provoke or intentionally bring the attack upon himself in order to provide himself an excuse to use force against the other person, that is, against—in this case, against [the victim].

"And the last [element] that the state may raise—I've already given you four—the last one is that to invalidate the claim of self-defense, the last one is that the defendant himself was engaged in a mutual type combat, that is combat with [the victim], that was not specifically authorized by law.

"Now, should the state prove any one of these elements to you beyond a reasonable doubt, the defendant cannot prevail on his claim of self-defense."

in the bedroom, when considering the defendant's intent at the time of his encounter with [the victim]. I believe that would mislead the jury."

The defendant did not preserve his claim that the court failed to instruct the jury on the exception to his duty to retreat when he is in his dwelling. See General Statutes § 53a-19 (b) (1). The instruction was not included in the defendant's request to charge or noted in his exception to the charge that was given. "The requirement that the claim made by the exception be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked. . . . The purpose of the rule requiring that an exception be taken that distinctly states the objection and the grounds therefor is to alert the court to any claims of error while there is still an opportunity for correction." (Internal quotation marks omitted.) *State* v. *Deptula*, 31 Conn. App. 140, 146, 623 A.2d 525 (1993), appeal dismissed, 228 Conn. 852, 635 A.2d 812 (1994).

In taking exception to the charge, defense counsel noted that the court did not read his request to charge verbatim,[8] but did not inform the court as to how the

---

[8] The defendant requested the following charge with respect to self-defense:

"In this case, [the defendant] has testified that he used the knife to defend himself from what he believed to be the imminent use of force on his person by [the victim]. [The defendant] testified that [the victim] struck him with a baseball bat, which fractured his nose. [The defendant] became dazed, disoriented, and attempted to get away from [the victim]. [The defendant] staggered into the kitchen, where he grabbed a knife from the kitchen counter, after he heard Jane Cadorette tell [the victim] not to strike [the defendant] with the baseball bat. [The victim] swung the knife in self-defense.

"If you credit [the defendant's] testimony that he believed he was under imminent attack by [the victim] with a deadly weapon, he was justified in using that amount of force in which be believed to be necessary to defend himself. Therefore, [the defendant] was justified in using that amount of force, which, under the circumstances as [the defendant] believed them to be, was necessary to defend himself and therefore his conduct was that of a reasonable person, had he been in [the defendant's] shoes. You must

jury was misled or how the defendant was deprived of a fair and impartial jury by the charge that was given. "It is not error for a trial court to refuse to charge a jury in the exact words of a requested instruction, as long as the requested charge is given in substance." (Internal quotation marks omitted.) *State* v. *Collins*, 38 Conn. App. 247, 254, 661 A.2d 612 (1995).

In his reply brief to this court, the defendant requests that we review his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). A defendant, however, may not seek *Golding* review in a reply brief because the state has no opportunity to respond to the defendant's argument. See *State* v. *Salvatore*, 57 Conn. App. 396, 401, 749 A.2d 71, cert. denied, 253 Conn. 921, 755 A.2d 216 (2000); *State* v. *Fisher*, 57 Conn. App. 371, 379 n.9, 748 A.2d 377, cert. denied, 253 Conn. 914, 754 A.2d 163 (2000). We therefore decline to review the defendant's claim.

### III

The defendant's third claim is that the court improperly admitted certain rebuttal testimony into evidence. We disagree.

The following facts are necessary for our resolution of the defendant's claim. As previously discussed, the defendant claimed that he acted in self-defense and did not have to retreat from the apartment because he lived there. Cadorette testified that she and the defendant leased and lived in the apartment together until one week before the incident, when Cadorette terminated the relationship. The defendant had removed most of his personal possessions from the apartment, and Cadorette had taken his clothing to the home of his new girlfriend, Long.

---

remember, it is the state's burden to disprove self-defense beyond a reasonable doubt."

On cross-examination, the defendant denied that he was romantically involved with Long or that he spent the night with her the night before the incident. He also testified that his clothing was still in the apartment.

The state called Long as a rebuttal witness. The defendant objected to Long's testifying about their relationship because it was a collateral matter. The court overruled the objection. Long testified that the defendant was her former boyfriend and that the two of them spent the night of September 6, 1997, together at her home. The defendant had stayed with her a few days prior to September 7, 1997, and Cadorette had brought his clothing to Long's home.

" 'The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice.' . . . *State* v. *Hines*, 243 Conn. 796, 801, 709 A.2d 522 (1998). 'Evidence is considered relevant when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case.' . . . *State* v. *Garcia*, 37 Conn. App. 619, 634, 657 A.2d 691, cert. denied, 234 Conn. 917, 661 A.2d 97 (1995). Furthermore, relevant evidence 'has a logical tendency to aid the trier in the determination of an issue.' *State* v. *Jeffrey*, 220 Conn. 698, 704, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992)." *State* v. *Martinez*, 51 Conn. App. 59, 74–75, 719 A.2d 1213, cert. denied, 247 Conn. 952, 723 A.2d 324 (1998). " 'A

witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case.' *State* v. *Negron,* [221 Conn. 315, 327, 603 A.2d 1138 (1992)]." *State* v. *Smith,* 46 Conn. App. 285, 294, 699 A.2d 250, cert. denied, 243 Conn. 930, 701 A.2d 662 (1997).

Long's testimony was not collateral because it went to the defendant's claim of self-defense in that he claimed to have had the right to be in the apartment because it was his home. Long's testimony also helped the jury determine the credibility of the defendant. Long's testimony tended to support Cadorette's version of her relationship with the defendant. "When a witness voluntarily testifies, as did the defendant here, he asks the jury to believe him. The jury should be informed about the sort of person asking them to take his word." (Internal quotation marks omitted.) *State* v. *Hernandez,* 224 Conn. 196, 207, 618 A.2d 494 (1992). The court, therefore, properly admitted Long's rebuttal testimony into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.